**Larry E. CLARK, Plaintiff-Appellee,**

v.

**Berkeley L. BUNKER et al., Defendants-Appellants.**

No. 25224.

United States Court of Appeals, Ninth Circuit.

Jan. 14, 1972.

John Peter Lee (argued), Rulon A. Earl, Las Vegas, Nev., for defendants-appellants.

Douglas Stripp (argued), Russell W. Baker, James F. Duncan, of Watson, Ess, Marshall & Enggas, Kansas City, Mo., Lee R. Rose, of Morse, Graves, Parraguirre & Rose, Las Vegas, Nev., for plaintiff-appellee.

Before KOELSCH, BROWNING, and TRASK, Circuit Judges.

**BROWNING**, Circuit Judge:

This is an appeal from a judgment in a diversity action awarding damages against appellants for the misappropriation of appellee's trade secret, consisting of a detailed plan for the creation, promotion, financing, and sale of contracts for "prepaid" or "pre-need" funeral services.

The trial court[1] rested liability upon the legal conclusion that "[s]ince Defendant, Berkeley L. Bunker, appropriated and put to use Plaintiff's plan in breach of the confidential relationship existing between the parties, Plaintiff is entitled to an accounting of profits and to damages." Appellants concede that use of the trade secret of another, conveyed in confidence, may be actionable,[2] but raise a number of objections to the application of this principle to the present case, and to the award of damages.

1. Appellants contend that appellee's plan consisted of legal forms, advertising methods, and sales techniques not protectable as a trade secret under Baker v. Selden, 101 U.S. 99, 25 L.Ed. 841 (1879); Reynolds & Reynolds Co. v. Norick, 114 F.2d 278 (10th Cir. 1940); Hamilton Manufacturing Co. v. Tubbs Manufacturing Co., 216 F. 401 (W.D. Mich.1908); Continental Casualty Co. v.

---

1. The case was tried to the court.

2. E. I. Du Pont de Nemours Powder Co. v. Masland, 244 U.S. 100, 102, 37 S.Ct. 575, 61 L.Ed. 1016 (1917); Dekar Industries, Inc. v. Bissett-Berman Corp., 434 F.2d 1304, 1306 (9th Cir. 1970); Restatement of Torts, § 757; 2 R. Callman, Unfair Competition and Monopolies, § 51, p. 346 (3d ed. 1968, 1971 Supp.); R. Milgrim, Trade Secrets [Vol. 12 of Business Organizations], Ch. 4 (1971 Supp.); A. Turner, The Law of Trade Secrets, Part IV (1962); R. Ellis, Trade Secrets, Chs. 4, 5, 11 (1953).

Sears, Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964), and Compco Corp. v. Day-Brite Lighting Inc., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964), do not bar an action for misappropriation of trade secrets in breach of a confidential relationship. See Dekar Industries, Inc. v. Bissett-Berman Corp., supra, 434 F.2d at 1306; Water Services, Inc. v. Tesco Chemicals, Inc., 410 F.2d 163, 171–172 (5th Cir. 1969); Winston Research Corp. v. Minnesota Mining & Manufacturing Co., 350 F.2d 134, 138 n. 2 (9th Cir. 1965); Servo Corp. of America v. General Electric Co., 337 F.2d 716, 724–725 (4th Cir. 1964); Callman, supra, at 346; Trade Secrets Law After Sears and Compco, 53 Va.L.Rev. 356, 368 (1967).

Liability is predicated on communication of the secret to the defendant in confidence and disclosure or unauthorized use of the information by the defendant. The finding of the court below that the defendants obtained the appellee's plan in confidence and improperly utilized it in its entirety for their own advantage is clearly correct.

Beardsley, 151 F.Supp. 28 (S.D.N.Y. 1957); and American Institute of Architects v. Fenichel, 41 F.Supp. 146 (D. C.N.Y.1941).

■ "A trade secret is a process or device for continuous use in the operation of the business." Restatement of Torts, § 757, Comment b, p. 5. It therefore does not include "simply information as to single or ephemeral events in the conduct of the business, as, for example, the . . . date fixed for the announcement of a new policy or for bringing out a new model or the like." *Id.* With this exception, no category of information is excluded from protection as a trade secret because of its inherent qualities. "A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Id.* "Generally it relates to the production of goods. . . . It may, however, relate to the sale of goods or to other operations in the business. . . . " *Id.*

■ The plan developed by appellee, as detailed in the district court findings, encompassed all of the forms, information, and techniques, for formulating, promoting, financing, and selling contracts for "prepaid" funeral services in the continuous operation of a mortician's business. The district court found, on ample evidence, that the plan gave its users a marked advantage over competitors. The plan therefore satisfied the requirements for trade secret protection so far as subject matter is concerned.

The cases relied upon by appellants are not in point. *Beardsley, Hamilton, Fenichel,* and *Baker* dealt with the copy-*rightability* of widely published forms and advertisements, not with their protectability as trade secrets. *Reynolds* was a trademark and unfair competition suit involving unpatented and uncopyrighted business forms; no secrecy was alleged.

■ 2. Appellants argue that the plan was not "novel." The selling of "pre-need" funerals was common; and appellee took many of the elements of his plan from the plans of others. However, "[n]ovelty and invention are not requisite for a trade secret." Restatement of Torts, § 757, Comment b, pp. 6–7. No more is required than that the information possess a qualified secrecy, next discussed.

3. Appellants contend that the plan was not "secret" because appellee had authorized seven other corporations to use it; he had discussed it with the managing director of a national association of morticians; the plan was described in a trade publication issued by this association; the files of another such association contained some forms used in the plan; and some of the forms used were necessarily disclosed to the members of the public who purchased "pre-need" funerals.

■ "The subject matter of a trade secret must be secret. Matters of public knowledge or of general knowledge in an industry cannot be appropriated by one as his secret." *Id.* at 5–6.[3] However, the interest protected by this branch of the law is not secrecy as such. "The protection is merely against breach of faith and reprehensible means of learning another's secret." *Id.* at 7.[4] Accordingly, "a substantial element of secrecy must exist, so that, except by the use of improper means, there would be

3.  *See also* Bowser, Inc. v. Filters, Inc., 398 F.2d 7, 9 (9th Cir. 1968); Smith v. Dravo Corp., 203 F.2d 369, 373 (7th Cir. 1953); Milgrim, *supra* note 2, at 2–13.

4.  Winston Research Corp. v. Minnesota Mining & Manufacturing Co., 350 F.2d 134, 138 & n. 2 (9th Cir. 1965); Dekar Industries, Inc. v. Bissett-Berman Corp., 434 F.2d 1304, 1306 (9th Cir. 1970); Smith v. Dravo Corp., 203 F.2d 369, 374–375 (7th Cir. 1953).

difficulty in acquiring the information." *Id.* at 6.[5]

■■ Whether such a degree of secrecy existed in a particular case is a question of fact.[6] It is not negated because defendant by an expenditure of effort might have collected the same information from sources available to the public.[7] Obviously it may be present despite the publication of general descriptions in advertisements, sales brochures, and similar material;[8] or by sales where the details are not readily apparent from inspection of what is sold, or the purchasers do not disclose those details.[9]

■ The district court found the requisite secrecy here by clear implication, though not expressly. That finding is supported by the evidence. Appellee invested substantial time, thought, and money in collecting and testing the data, and creating and perfecting the forms, processes, and techniques that provide the substance and detail of appellee's plan. Substantial effort would be required to assemble the detailed elements of the plan from publicly available sources. Disclosure to the mortuary association's director did not result in general publication. The association's special bulletin contained only a general outline of the plan, and, in any event, was published after appellants had obtained the information by breach of confidence and put it to use. The corporations previously authorized to use the plan as a whole did not make the details of the plan available. Those details were not amenable to discovery by an outsider's analysis of the documents disclosed to purchasers of "pre-need" contracts. The difficulty of securing the necessary details except by unlawful means is evidenced by the substantial sum ($55,000) paid to appellee for a corporation which appellee had formed to use the plan; and by the extreme and unlawful means appellants employed to secure those details—including concealment, affirmative misrepresentation, and commercial espionage. *See* A. H. Emery Co. v. Marcan Products Corp., 389 F.2d 11, 16 (2d Cir. 1968).

4. Appellants' remaining contentions challenging liability [10] do not merit separate discussion. Assuming they have a basis in law, all rest upon factual assumptions that were rejected by the district court on adequate evidence.

■ 5. Turning to damages, appellants' first argument is that no award of compensatory damages could be made

---

5. *See also* A. H. Emery Co. v. Marcan Products Corp., 389 F.2d 11, 16 (2d Cir. 1968); Smith v. Dravo Corp., 203 F.2d 369, 373–375 (7th Cir. 1953); Milgrim, *supra* note 2 at 2–46; Callman, *supra* note 2 at 403.

Logically it might seem that if a breach of confidential relationship occurs it should be irrelevant that the information used or disclosed is readily available. The rule is to the contrary. *See* Wilkin v. Sunbeam Corp., 377 F.2d 344 (10th Cir. 1967). A suggested rationale is that when the information is a matter of public knowledge it could not have been imparted in confidence. Servo Corp. of America v. General Electric Co., 393 F.2d 551, 555 (4th Cir. 1968). This explanation will suffice only when confidentiality was exacted by an implied agreement rather than an express one. In any event, it is difficult to conceive of any case in which the confider would be damaged or the confidant benefited by the confidant's use or disclosure of information known to all.

6. Callman, *supra* note 2 at 390, 403; Milgrim, *supra* note 2 at 2–43, 2–44.

7. Heyman v. AR. Winarick, Inc., 325 F.2d 584, 590–91 (2d Cir. 1963); Franke v. Wiltschek, 209 F.2d 493, 495 (2d Cir. 1953); Smith v. Dravo Corp., 203 F.2d 369, 374–375 (7th Cir. 1953).

8. Milgrim, *supra* note 2 at 2–21, 2–25.

9. *See* Water Services, Inc. v. Tesco Chemicals, Inc., 410 F.2d 163, 173 (5th Cir. 1969). Public sales were also involved in Franke v. Wiltschek, 209 F.2d 493, 495 (2d Cir. 1953). *See also* Callman, *supra* note 2 at § 53.3(d), pp. 401–03. Milgrim, *supra* note 2 at 2–21, 2–25.

10. That the plan was not "concrete"; that it was not conceived by appellee; that it was not owned by appellee; that it was not communicated to appellants in usable detail; that it was not communicated in expectation of compensation.

against appellants other than Memorial Guardian Plans, Inc., because no other appellant was shown to have received any profits from the misappropriation and use of appellee's plan. It is sufficient to say that the trial court found appellants to be joint tortfeasors and hence jointly and severally liable for the damage sustained by appellee, and the record supports that finding.

6. Appellants contend that the trial court erred in awarding appellee not only the profits appellants earned but also certain income on trust funds which appellee would have received but for the tort, because the proper measure of damages for misappropriation and use of a trade secret is not what the plaintiff lost but what the defendant gained, citing International Industries, Inc. v. Warren Petroleum Corp., 248 F. 2d 696, 697 (3d Cir. 1967).

The rule to which appellants refer is not a *limitation* upon the damages due appellee for willful misappropriation of his trade secret. In such cases "damages should not be restricted to defendant's actual profits from his improper uses of the secret; the plaintiff is entitled to the profit he would have made had his secret not been unlawfully used, but not less than the monetary gain which the defendant reaped from his improper acts." 2 R. Callman, Unfair Competition and Monopolies, § 51, pp. 495–96 (3d ed. 1968, 1971 Supp.). Appellants' confusion may arise from the rule antedating the unification of law and equity, that on a bill in equity a wrongdoer would be required to account for profits on a theory of unjust enrichment, but damages could be recovered only in an action at law. *See* Tilghman v. Proctor, 125 U.S. 136, 143–144, 8 S. Ct. 894, 31 L.Ed. 664 (1888).

7. Under the general heading, "Did the Court Err in Setting the Amount of Damages?," appellants raise a number of miscellaneous issues, two of which we mention.

Appellants make the general assertion that the court should have received additional evidence on the question of damages, but their only specific suggestion is that appellee's profits should have been proven and considered in mitigation. Absent some ground for arriving at a different result, it was reasonable for the court to conclude, as it did, that if appellants had not appropriated appellee's plan, appellee would have made all of the "prepaid" plan sales in the area. In any event, appellee was entitled to recover appellants' profits whether or not they represented losses to appellee.

Appellants object to the award of damages for the period from June 30, 1965, when the court referred the case to a special master for a determination of appellants' profits, through June 30, 1967, when the master's report was filed. The objection appears to rest ultimately on the premise that it was unfair for the court to deny injunctive relief, thus allowing appellants to continue their business unchanged for the extended period required to compute damages, and then to require appellants to disgorge the profits earned during this period. But appellee was entitled either to an injunction or to damages. Winston Research Corp. v. Minnesota Mining & Manufacturing Co., 350 F.2d 134, 144 (9th Cir. 1965). The court's denial of injunctive relief after a determination of liability should have put appellants on notice that they must respond in damages for any continued wrongful use of appellee's trade secrets. Appellants could limit their liability only by abandoning the use of appellee's plan, or by showing that it ceased to be secret. Callman, *supra*, at 404, n. 77, 406.

8. Finally, appellants object to the award of punitive damages against appellant Berkeley L. Bunker, on two basic grounds.

The first is that absent express statutory authority the district court, sitting as a court of equity, had no power to assess punitive damages, citing Coca Cola v. Dixie Cola Laboratories, 155 F.2d 59 (4th Cir. 1946). The short answer is that where compensatory damages are sought and awarded, as in this

case, the court has power, on a proper record, to award punitive damages as well. *See generally*, El Ranco, Inc. v. First National Bank, 406 F.2d 1205, 1218–1219 (9th Cir. 1968); Davenport v. Mutual Benefit Health & Accident Ass'n, 325 F.2d 785 (9th Cir. 1963).

Second, Bunker argues that the punitive damages award was excessive, citing Miller v. Schnitzer, 78 Nev. 301, 371 P.2d 824 (1962). But in that case the trial court assessed the defendant's total net worth at $51,000, and then awarded punitive damages of $50,000. The danger of financial ruination was obvious. 371 P.2d at 829. In this case, there was substantial evidence in the record of Bunker's ability to pay.[11] He has been co-owner of a large mortuary in southern Nevada since 1944. The master reported that his $800 investment in forming "pre-need" corporations was alone worth $85,592 by November 30, 1965. We cannot say on these facts that the award was excessive.

Affirmed.

Aldisert, Circuit Judge, concurred and filed opinion.

---

11. It was not necessary for the total wealth of Bunker to be assessed prior to an award of punitive damages against him. Hotel Riviera, Inc. v. Short, 80 Nev. 505, 396 P.2d 855, 863 (1964). The award was proper in the absence of evidence showing the likelihood that the specified amount would destroy Bunker financially. *See* El Rancho, Inc. v. First National Bank, 406 F.2d 1205, 1218–1219 (9th Cir. 1968).