TRI–TRON INTERNATIONAL, a
Montana Corporation,
Plaintiff-Appellee,

v.

A. A. VELTO and William Wurz, etc.,
et al., Defendants-Appellants.

No. 74–1725.

United States Court of Appeals,
Ninth Circuit.

Oct. 28, 1975.

Sidney W. Jones, Ontario, Cal. (argued), of Jones & Tuckerman, Billings, Mont., for defendants-appellants.

Dale F. Galles (argued), of Harwood, Galles & Gunderson, Billings, Mont., for plaintiff-appellee.

## OPINION

Before KOELSCH and KILKENNY, Circuit Judges, and EAST,* District Judge.

KILKENNY, Circuit Judge:

Appellants Velto and Wurz appeal from a judgment entered against them and George Doerner in a nonjury trial in which they were charged, among other things, with improper use of a trade secret and with engaging in a civil conspiracy to improperly utilize the secret.

### Factual Background

A brief summary of the facts follows:

By 1967, the appellee, and its predecessor, had developed a device, the purpose of which was to remove scaling from water pipes by an electro-chemical process. Starting in 1968, Velto and Doerner

---

* The Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

distributed the device in California under contract with appellee using the trade name, DM Associates [DM]. From that time until August, 1970, while DM was acting as a distributor for appellee, the parties were negotiating on the subject of DM purchasing appellee's enterprise. In August, 1970, when it appeared that the parties were about to close the transaction, a schematic diagram of appellee's device was given to Doerner and Velto to facilitate their financial negotiations with their banker. Only once in the past had such a diagram been made available. That was in connection with the sale of one of appellee's units to the City of Los Angeles, the city requiring such a diagram for inspection before purchase. Rigid restrictions were placed upon the use of these diagrams.

Some time before these negotiations, Doerner discussed deficiencies in appellee's unit with appellant Wurz. Late in 1970, Wurz, under the assumed name of Holiday Engineering commenced manufacturing a unit similar in design to appellee's under the trade name Aqua Zap. Prior to March, 1971, some of these units were purchased by DM.

In the meantime, commencing in May, 1970, appellants and Doerner were discussing the formation of a corporation to be named Anti-Pollution Technology [Anti-Poll], the corporation to consolidate the interests of Holiday Engineering and DM. In September, 1971, the partnership of Velto and Doerner was dissolved, Doerner continuing as sole operator under DM. At the same time, Velto and Wurz formed a corporation, Holiday Engineering, Inc. [Holiday], which immediately commenced the manufacture of a water treatment device similar to Aqua Zap, but under the new name of Scale-Gon. While Wurz was manufacturing Aqua Zap, a printed circuit board prepared by him was submitted by Doerner and Velto to appellee as an improvement to its device. Even at this time there was no disclosure to appellee that DM was developing a competing device in cooperation with Wurz. The printed circuit board submitted to appellee was rejected. Substantial evidence was offered that it would be very difficult to reproduce appellee's device without a schematic diagram and that the units produced by Wurz and appellee's unit used essentially the same components and had the same electrical input and output as appellee's device.

## The Proceedings Below

The appellee's claims as outlined in the pre-trial order are three in number: (1) a claim that appellants Velto and Doerner breached a distributorship agreement. The district court found against appellee on this claim. (2) a claim that appellants and Doerner individually and through firms or associates known as Holiday, Anti-Poll and DM wilfully, maliciously, deceptively, and oppressively appropriated the appellee's trade secret, to the latter's general damage and actual damage in the sum of $100,000.00 and punitive damages, and (3) a claim that appellants Wurz, Velto and Doerner, individually and through the business firms and associates mentioned in claim two conspired to and did begin the manufacture and sale of a water treater called Aqua Zap using the trade secrets, specification sheets and other promotional material belonging to appellee, and did palm off and represent the Aqua Zap water treater as appellants' own product, all to appellee's actual damage in the sum of $100,000.00, and punitive damages.

The district court found in favor of the appellee on the last two claims. On the second claim, it awarded appellee actual damages in the sum of $35,000.00, and punitive damages in the sum of $75,000.00. On the third claim, it awarded appellee actual damages in the sum of $25,000.00 and punitive damages in the sum of $50,000.00. The action of the trial court in dismissing the counterclaim of appellants against Doerner and awarding the latter a judgment against appellants in the sum of $750.00 is not before us.

## Second Claim

We summarize appellants' principal contentions under this claim as follows:

(1) that appellee failed to prove the elements of the trade secret and, likewise, failed to prove that appellants acting in concert unlawfully utilized the secret, if any, and

(2) that appellee failed to prove damages, either actual or punitive.

## Trade Secret

■ Our review of the record convinces us that the district court correctly found that the appellee had a trade secret developed by experimentation and testing from time to time, consisting of an electronic water treating device designed to prevent formation of scales in water pipes and water systems and to remove therefrom scales already formed. The evidence clearly establishes that the successful operation of appellee's device is the result of the application of an electric pulse and voltage to the water flowing through the pipe to which the device is attached, with the result being accomplished by electro-chemical means.

The record is clear that in the latter part of 1970, the individual appellants and Doerner, through DM and Holiday, began the manufacture and marketing of a water treating device similar to that produced and marketed by appellee, and that such device was marketed under the name of Aqua Zap. This device was developed by appellant Wurz and was produced and sold as a consequence of the contacts of appellants and Doerner with the appellee and as a result of the alleged shortcomings of appellee's device conveyed by Doerner to appellant Wurz and the latter's personal examination of the device. It is clearly established that several of these information revealing "contacts" by appellants and Doerner with appellee occurred during the course of the negotiations between the parties for the sale of appellee's corporation to appellants and Doerner. It was during these negotiations, both in person and by letter and telephone, that appellee, as an inducement to sell, encouraged by appellants and Doerner, divulged to them information relating to its product, not otherwise generally known to the public or to any of appellee's competitors. The record fully supports the district court's findings on these issues.

■ Additionally, the district court, under its conclusions found that appellee possessed a protectible trade secret and that such secret was obtained by appellants and Doerner by the abuse of appellee's confidence in them during the negotiations to sell. The court further found that they wrongfully appropriated appellee's trade secret to their own use and were liable in damages in the sums above mentioned for the wrongful appropriation and use of appellee's trade secret. In addition to the award of damages on the second claim, the court also granted injunctive relief, which it found necessary to create an adequate remedy.

Even if we were persuaded by appellants' argument on the facts, which we are not, we would be bound by the command of Rule 52(a), F.R.Civ.P, that if the findings of the trial court are not clearly erroneous, we must affirm. *Pachmayr Gun Works, Inc. v. Olin Mathieson Chemical Corp.,* 502 F.2d 802, 807 (C.A.9 1974); *W. S. Shamban & Co. v. Commerce & Industry Ins. Co.,* 475 F.2d 34, 36 (C.A.9 1973). We find nothing erroneous, let alone clearly erroneous, in the findings.

■ The fact that the district court intermingled some of its findings of fact with its conclusions of law is of no significance. We look at a finding or a conclusion in its true light, regardless of the label that the district court may have placed on it. 9 Wright & Miller, Federal Practice & Procedure, § 2579; *Gulf King Shrimp Co. v. Wirtz,* 407 F.2d 508, 515 (C.A.5 1969); *Featherstone v. Barash,* 345 F.2d 246, 251 (C.A.10 1965); *Benrose Fabrics Corp. v. Rosenstein,* 183 F.2d 355 (C.A.7 1950). In other words, the findings are sufficient if they permit a clear understanding of the basis for

the decision of the trial court, irrespective of their mere form or arrangement.

■ It is argued that the district court misapplied the relevant law to the controlling facts. We disagree. Because there is an absence of Montana law on the subject of trade secrets, the district court quite properly turned to the Restatement of the Law, Torts, § 757(a), (b), (c),[1] and interpreted it consistent with *K–2 Ski Co. v. Head Ski Co.,* 506 F.2d 471, 473 (C.A.9 1974). There is substantial evidence in the record that appellants and Doerner were individually and collectively in violation of subdivisions (a), (b), and (c) of § 757.

■ The courts in California, where much of the action took place, have adopted and rely upon § 757 as the law of that state. *Uribe v. Howie,* 19 Cal. App.3d 194, 96 Cal.Rptr. 493, 501 (1971); *By-Buk Co. v. Printed Cellophane Tape Co.,* 163 Cal.App.2d 157, 329 P.2d 147 (1958). Consequently, there is no choice of law problem and the general common law and § 757 of the Restatement should apply. *K–2 Ski Co.,* 506 F.2d at 473. The latter case is also authority for the statement that there are two common law doctrines on secrecy: (1) absolute secrecy, and (2) relative secrecy. We said in that case that the better rule is the majority view of relative secrecy, which has been adopted by the Restatement § 757. It requires only a substantial element of secrecy. *Clark v. Bunker,* 453 F.2d 1006, 1009 (C.A.9 1972). The issue of whether such degree of secrecy exists in a particular case is one of fact, rather than of law. *Bunker, supra,* at 1010, and the clearly erroneous standard of review applies to such an issue. *K–2 Ski Co.,* 506 F.2d at 474. We hold that the relative secrecy rule is the one which the Montana courts would adopt and that the issue of fact has been resolved adversely to the appellants. Additionally, it is clear that the California courts follow the doctrine of relative secrecy. *Futurecraft Corp. v. Clary Corp.,* 205 Cal.App.2d 279, 23 Cal.Rptr. 198 (1962).

■ Appellants' contention that there is no proof in support of appellee's second cause of action is meritless. Despite their argument to the contrary, the second cause is based on the alleged misappropriation of a trade secret in violation of Restatement, § 757, rather than on a breach of contract. In these circumstances, the fact that appellant Wurz had no contractual relationship with appellee is wholly immaterial. Wurz's argument that he developed his Aqua Zap without any assistance from Velto or Doerner is not supported by the record. In any event, the district court found otherwise, and the record supports this finding.

The fact that Wurz may have made some insignificant modifications or changes in appellee's device is of no consequence. The process involved in Aqua Zap and ScaleGon is essentially the same as that involved in appellee's device. *Forest Laboratories, Inc. v. Pillsbury Co.,* 452 F.2d 621, 625 (C.A.7 1971).

### Damages

■ As might be expected, the evidence on damages is relatively thin, but we hold that it is sufficient to sustain the award under the second claim of $35,000.00 actual damages. Evidence was received on appellee's sales in 1969 and 1970 at prices ranging from $440.00 to $5,300.00 per unit. There is evidence

---

1. "§ 757. LIABILITY FOR DISCLOSURE OR USE OF ANOTHER'S TRADE SECRET—GENERAL PRINCIPLE.

One who discloses or uses another's trade secret, without a privilege to do so, is liable to the other if

(a) he discovered the secret by improper means, or

(b) his disclosure or use constitutes a breach of confidence reposed in him by the other in disclosing the secret to him, or

(c) he learned the secret from a third person with notice of the facts that it was a secret and that the third person discovered it by improper means or that the third person's disclosure of it was otherwise a breach of his duty to the other, or"

\* \* \* \* \* \*

that a substantial number of units, possibly up to 100, of the pirated device were sold by Holiday to DM. It is clear that the sales from appellee to DM were increasing from March, 1969, to the latter months of 1970. Very few sales, if any, were made after Holiday entered the market. Although net profits are not shown, opinion evidence was offered and received on the sales and the cost of sales by appellee with a projection of an assumed increase in gross profits over a period of five years.

The district court held that the measure of damage was the value of the loss of the secret to the appellee under the circumstances. Appellants, by reason of their failure to produce financial statements and data concerning profits and losses of Holiday are not in a favored position to challenge the appellee's proof. Appellee attempted, without success, to secure the financial statement of Holiday. By inference, at least, appellants and Doerner were ordered to submit financial statements pertaining to the manufacture and sale of units to DM and other users of Aqua Zap and Scale-Gon water treaters. Beyond doubt, appellee's evidence was sufficient to require appellants to come forward with evidence of net profit or losses of their operation under Holiday.

■ The general rule that prohibits evidence of speculative profits does not apply to uncertainty as to the amount of the profits which would have been derived, but to uncertainty or speculation as to whether loss of profits was the result of the wrong and whether any such profits would have been derived at all. This is the law of both California and Montana. *Monroe v. Owens,* 76 Cal. App.2d 23, 172 P.2d 110, 114 (1946); *Engle v. City of Oroville,* 238 Cal.App.2d 266, 47 Cal.Rptr. 630, 634 (1965); *McCollum v. O'Neill,* 128 Mont. 584, 281 P.2d 493, 499 (1954). Here, the direct and circumstantial evidence is highly persuasive that appellee sustained a substantial loss of profits as a result of appellants' wrongdoing.

It is reasonable to conclude that if appellants had not appropriated appellee's device, the appellee, through DM, would have made all sales of the device in the area. *Bunker, supra,* at 1011.

It has been said that there are two basic methods for assessing damages for misappropriation of trade secrets, (1) the damages sustained by the victim. This is the traditional common law remedy. And (2) the profits earned by the wrongdoer by the use of the misappropriated material. *Sperry Rand Corp. v. A-T-O, Inc.,* 447 F.2d 1387, 1392 (C.A.4 1971). This circuit, however, in *Clark v. Bunker, supra,* clearly indicated that the measure of damages for the wrongful misappropriation of a trade secret was not limited to the misappropriator's profits, but also included the victim's loss which might in no way be related to the benefits accruing to the misappropriator. We went on to say that the proper measure of damage was no longer damages limited to either plaintiff's loss or defendant's benefit, but included a combination of both where the circumstances called for such, in order to make the plaintiff whole. Here, it seems manifest that the district court took this middle course. *See Telex Corp. v. I.B.M. Corp.,* 510 F.2d 894, 931 (C.A.10 1975), analyzing *Bunker.* We are satisfied that the award of $35,000.00 as actual damages on appellee's second claim is within the realm of reason and we affirm that award.

Appellants insist that the punitive damage award, in any amount, was improper. Again, we disagree. In *Clark v. Bunker, supra,* we held that where compensatory damages are sought and awarded, the court has power, on a proper record, to award punitive damages. Here, the district judge found that appellants and Doerner obtained appellee's trade secret by the abuse of appellee's confidence in them in connection with the negotiations to sell appellee's device and that the appellants and Doerner wrongfully appropriated appellee's trade secret to their own use. He further found that the award of punitive dam-

ages was appropriate " . . . because of the connivance, misrepresentation of intent and underhanded dealing by the several appellants and Doerner in their contacts with appellee." This finding is supported by substantial evidence.

■ Appellants argue that the award of punitive damages is grossly excessive and that such an award should have some relation to ability to pay. They cite in support of their position *Adams v. Hunter,* 343 F.Supp. 1284, 1291 (D.S.C. 1972), and *Collins v. Brown,* 268 F.Supp. 198, 201 (D.D.C.1967), among others. While these cases, in accordance with the general rule, indicate that the ability to pay is of some importance, there is nothing in either of them, or in any case cited by appellants, which holds that the burden of proof is upon the injured party to produce evidence showing the misappropriator's ability to pay. *See Bunker, supra,* at 1012, fn. 11; *El Rancho, Inc. v. First National Bank,* 406 F.2d 1205, 1218–1219 (C.A.9 1968).

The Montana statute, § 17.208, R.C.M. 1947, recognizes the right to award damages " . . . for the sake of example, and by way of punishing the defendant." The Montana courts will not interfere with the award unless it appears to have been influenced by passion, prejudice, or some improper motive, or unless it is outrageously disproportionate either to the wrong, or the situation or circumstance of the parties. *Thompson v. Mattuschek,* 134 Mont. 500, 333 P.2d 1022, 1028 (1959). We cannot say that the punitive award was outrageously disproportionate to the situation or circumstances of the parties. Appellants offered no evidence on their financial ability to pay. In these circumstances, we will not interfere with the award.

■ Appellants' argument that injunctive relief is improper is meritless. In *K–2 Ski Co.,* 506 F.2d at 477, we held that either injunctive relief or damages, or both, might be awarded in a trade secret case. We affirm on the second claim.

## Third Claim

■ The controlling question here presented is whether the law of either California or Montana supports an independent award on the civil conspiracy claim as well as on the claim of wrongful appropriation of a trade secret.

The district court was of the view that the law governing conspiracies, which justifies the imposition of civil sanction in Montana, as well as in California, permitted an allowance of damages on each of the claims. In arriving at this conclusion, the court indicated that an independent wrong was not necessary in order to permit the additional award on the civil conspiracy claim. In this, the court was in error.

■ In resolving this issue, we need only turn to the well accepted rule that a civil conspiracy alone does not give rise to a claim on which damages may be allowed. This is true even though in criminal law, there is no merger of conspiracy and the substantive acts toward which the conspiracy is aimed. *Unruh v. Truck Insurance Exchange,* 7 Cal.3d 616, 102 Cal.Rptr. 815, 498 P.2d 1063 (1972); *McCusker v. Roberts,* 152 Mont. 513, 452 P.2d 408 (1969). The utility of a civil conspiracy claim is that it permits a plaintiff to expand the number of persons who may be liable to him, under its doctrine that liability exists whether or not damage results from a person's direct action and regardless of the degree of his activity. Consequently, if all persons, as here, were actors in committing a wrongful act, the charge of conspiracy is surplusage. *Mining Securities v. Wall,* 99 Mont. 596, 45 P.2d 302 (1935); *Vargas v. Giacosa,* 121 Cal.App.2d 521, 263 P.2d 840 (1953), is in accord.

From a cursory examination, it might seem that *Wise v. Southern Pacific Co.,* 223 Cal.App.2d 50, 35 Cal.Rptr. 652 (1963), is to the contrary. However, a closer examination reveals that the California court in that case permitted two recoveries for damage from the same act for the reason that the act consisted of a

tort and a breach of contract. The dual recoveries were not based upon an act and conspiracy to accomplish the same act such as we have before us. Here, we have no breach of contract involved in the second and third claims.

In the light of these authorities, it is our considered conclusion that the appellee is not entitled to actual, compensatory, or nominal damages under the third claim. That being our conclusion, it follows that under the law of Montana and that of California, the lower court was in error in allowing punitive damages. *Paulson v. Kustom Enterprises, Inc.,* 157 Mont. 188, 483 P.2d 708 (1971); *Fauver v. Wilkoske,* 123 Mont. 228, 211 P.2d 420 (1949); *Kluge v. O'Gara,* 227 Cal.App.2d 207, 38 Cal.Rptr. 607 (1964). All damages, nominal, actual, and punitive are included in the award on the second claim.

### Other Contentions

We have fully considered appellants' other assignments of error, such as: (1) their attack on the findings and conclusions, (2) Doerner's examination as a hostile witness, (3) the admission of the accountant's testimony, and (4) the alleged bias of the district judge, and find them groundless.

### Conclusion

The judgment of the district court on the second claim is affirmed in full. The judgment on the third claim is reversed in its entirety. Costs to neither party.

Affirmed in part, reversed in part.