**Richard J. McKAY, Plaintiff,**

v.

**COMMUNISPOND, INC., Defendant.**

No. 83 Civ. 2731 (JMC).

United States District Court,
S.D. New York.

Oct. 28, 1983.

Gibney, Anthony & Flaherty, New York City (John C. Klett and Richard Manning, New York City, of counsel), for plaintiff.

Fine, Tofel, Saxl, Berelson & Barandes, New York City (Sherman Saxl, New York City, of counsel), for defendant.

## MEMORANDUM AND ORDER

CANNELLA, District Judge:

Plaintiff's motion for a preliminary injunction is granted and his motion adjudging defendant in contempt is denied. Fed. R.Civ.P. 44, 65.

Defendant's cross-motion for a preliminary injunction is granted in part and denied in part. Fed.R.Civ.P. 65.

Both parties' requests for attorneys' fees are denied.

## BACKGROUND

Plaintiff commenced this action premised on diversity jurisdiction, seeking to enjoin defendant Communispond, Inc. ["Communispond"] from interfering with his right to pursue his career as an instructor in the communications field. Shortly thereafter, plaintiff sought a temporary restraining order to prevent Communispond and its employees from further interfering with plaintiff's career. After some discussion, both parties agreed to the entry of a restraining order which in part provides that neither party discuss the existence or content of the Order. Order, 83 Civ. 2731 (JMC) (S.D. N.Y. Apr. 26, 1983) [hereinafter "April 26 Order"].

Defendant cross-moves to enjoin plaintiff from violating a covenant not to compete; engaging in unfair trade practices; breaching a duty of confidentiality; and using or disclosing trade secrets. Defendant claims that its interference with plaintiff's career is warranted because he violated a covenant not to compete. Plaintiff, in response, contends that he neither signed an agreement with a covenant not to compete nor disclosed any trade secrets.

Plaintiff also seeks an order adjudging Communispond in contempt because it allegedly disclosed the existence of this action to a prospective client of plaintiff. On July 15, 1983, the Court conducted a hearing on plaintiff's contempt motion. This Memorandum and Order sets forth the Court's findings of fact and conclusions of law with respect to the above-mentioned motions.

## FACTS

Since 1969, Communispond has offered programs for business executives to enhance their presentation skills. Today, the basic program consists of three stages: "benchmark," "eye/brain control" and "energy release." Other integral parts of defendant's core program include the use of "ideographs" or pictures, modules and question-and-answer sessions. Although Communispond continually revises its more specific programs which are designed for the needs of particular clients, it has retained the core program which includes benchmark, eye/brain control and energy release. Kevin Daley, co-founder and president of Communispond, contends that Communispond's program "together with the special sequence of our modules and our techniques of teaching constitute our trade secrets."[1] The programs are taught throughout the world by sixty instructors trained by Communispond, one of whom was McKay.

Because Communispond considers its program a trade secret, employees are apprised of this fact through seminars conducted by its general counsel. Furthermore, each employee is required to sign an employment contract which contains a covenant not to compete for three years after the employee leaves Communispond and

---

1. Affidavit of Kevin Daley at 2–3 (dated June 10, 1983).

which forbids disclosure of confidential information or trade secrets.[2]

Plaintiff worked for defendant from April 1, 1978 through September 17, 1982 until he voluntarily left and started his own company which competes with defendant. Plaintiff alleges that he did not solicit Communispond's clients until after his termination when he sent announcements to 250 prospective clients, including some of defendant's. Plaintiff is the only full-time employee of his company. Three individuals, however, work on a part-time basis.

Plaintiff began working for Communispond as an instructor and was a vice-president when he terminated his employment. Plaintiff acknowledges that Communispond regarded its sequential program and teaching methods as trade secrets. Plaintiff also admits he attended annual seminars which informed employees of their obligation to preserve any confidentialities of Communispond pursuant to their employment agreements. Plaintiff alleges that other competitors—including former employees of defendant—also offer similar programs to those of defendant.

On December 20, 1982, Fiduciary Trust Company ["Fiduciary"], a client of defendant, expressed interest in having plaintiff conduct seminars for its employees. Fiduciary decided to use plaintiff's program because it was similar to but less expensive than defendant's. Through written and telephonic communications, plaintiff and Fiduciary agreed upon the dates and locations for seminars.

On February 18, 1983, Edward Fuller, senior vice-president and part-owner of Communispond, advised Fiduciary that plaintiff was contractually obligated not to compete with defendant. On February 23, 1983, Barbara Marcin of Fiduciary allegedly informed plaintiff that Fiduciary was no longer interested in retaining his services based on communications with defendant. On February 24, 1983, a settlement of the instant dispute was discussed. Unfortunately, the parties were unable to resolve their disputes amicably, and plaintiff moved to enjoin defendant from interfering with his right to pursue his career.

Plaintiff claims that he intentionally never signed an employment agreement. Moreover, plaintiff contends that he developed his program and teaching skills independent of defendant. Further, plaintiff asserts that the components of defendant's programs are not new and novel. Similarly, plaintiff argues that because articles concerning defendant's programs have been published in *Fortune, New York Magazine, The Executive,* and *Across the Board,*[3] defendant's product—including its program and teaching methods—is not a trade secret. Plaintiff also alleges that his programs are distinguishable from defendant's. Finally, plaintiff alleges that others in the field, including former Communispond employees offer comparable programs.

Defendant has not produced an employment contract signed by plaintiff, although defendant contends that one of its employees remembers plaintiff signing such a contract. In addition, defendant claims that it reviewed the employment contracts of its professional staff, which included plaintiff, to insure that all had agreements which included covenants not to compete. Defendant asserts plaintiff was not one of the three employees who had not signed the contract. Defendant also argues that prior to plaintiff's tenure with Communispond, plaintiff acquired little experience in the communications area.

With respect to the contempt motion, plaintiff alleges that defendant violated the April 26 Order by discussing this action with a potential client of plaintiff, Coopers and Lybrand ["Coopers"], and by disclosing information defendant learned through plaintiff's deposition. Coopers participated in defendant's programs since 1980. Plain-

---

**2.** Defendant has obtained copyrights for some of its programs for particular clients; however, no copyright infringement violations are alleged herein.

**3.** *See* Plaintiff's Motion for Preliminary Injunction, Exhibits E, F, G, H (filed Apr. 18, 1983).

tiff, a former employee of Coopers, solicited work from the company in the spring of 1983. Plaintiff testified that on May 25, 1983 Fuller informed Murray Hirsch, a partner at Coopers, that plaintiff was "in litigation with defendant." Plaintiff stated that a Coopers' employee, Brian Horan, informed him of this discussion. Horan testified, however, that he did not tell plaintiff about his discussion. Nonetheless, plaintiff claims that defendant violated the April 26 Order and injured plaintiff's reputation and good will.

Defendant does not deny that it informed Coopers of the instant action but, rather, asserts that the disclosure occurred prior to the issuance of the April 26 Order. Specifically, defendant alleges that on April 20, 1983, Kevin Daley and Hirsch discussed plaintiff's former employment with Coopers and the instant action. Because plaintiff had recently left the employ of defendant, Daley alleges he was interested in discussing any problems Coopers may have experienced when plaintiff was a Coopers' employee.

Plaintiff also alleges that at the May 25th meeting, Fuller informed Hirsch that Horan had "moonlighted" by assisting plaintiff with one of his seminars. Fuller admits that he so informed Hirsch but asserts that the disclosure of this information was necessary to protect Communispond's business relationship with Coopers which is within the purview of the April 26 Order. Fuller also testified that he disclosed Horan's outside employment because he was afraid that Horan was seeking business for plaintiff, thereby interfering with defendant's relationship with Coopers. Defendant further justifies its conduct by arguing that it was not interfering with plaintiff's prospective business with Coopers because Hirsch indicated that he "was not impressed" with plaintiff and would not do business with him.

After his outside employment was made known to Hirsch, Horan agreed not to work for plaintiff again. Plaintiff testified that as a result of Horan's refusal to continue working on a part-time basis, he was unable to teach a course and lost income. In addition, plaintiff testified that defendant's disclosures have effectively precluded him from obtaining other work from Coopers unrelated to the programs offered by Communispond.

## DISCUSSION

■ To preliminarily enjoin a party, "[t]here must be a showing of (A) irreparable harm, and (B) either (1) likelihood of success on the merits, or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *Warner Bros., Inc. v. Gay Toys, Inc.,* 658 F.2d 76, 78 (2d Cir.1981). Plaintiff can establish irreparable harm by proving that Communispond interfered with plaintiff's business. Defendant, on the other hand, can demonstrate irreparable harm by showing that plaintiff violated a valid covenant not to compete; breached a duty of confidentiality by disclosing trade secrets or other confidential material; or engaged in unfair competition. *See Velo-Bind, Inc. v. Scheck,* 485 F.Supp. 102, 109 (S.D.N.Y.1979); *Diaz v. Indian Head, Inc.,* 402 F.Supp. 111, 114 (N.D.Ill.), *aff'd,* 525 F.2d 694 (7th Cir.1975) (applying New York law); *Town & Country House & H.S. v. Newbery,* 3 N.Y.2d 554, 147 N.E.2d 724, 170 N.Y.S.2d 328 (1958).

The record indicates that defendant interfered with plaintiff's pursuit of his career and that as a result plaintiff lost business. Defendant admits as much, but contends that it is justified because plaintiff breached his covenant not to compete. Indeed, defendant asserts that it will continue to interfere with plaintiff's business if he solicits business from any of defendant's former or existing clients and offers the programs he has been offering. If defendant lives up to its word, plaintiff will be foreclosed from pursuing his career, thus, causing him irreparable harm. If defendant's conduct is in fact justified, however, then plaintiff will not be entitled to injunctive relief. Accordingly, the Court must

determine whether plaintiff (1) was bound by a restrictive covenant; (2) breached a duty of confidentiality; or (3) engaged in unfair competition.

*Restrictive Covenants*

■■■ Initially, the Court notes that New York disfavors the enforcement of restrictive covenants because there are "powerful considerations of public policy which militate against sanctioning the loss of a man's livelihood," *Purchasing Associates, Inc. v. Weitz*, 13 N.Y.2d 267, 272, 196 N.E.2d 245, 247, 246 N.Y.S.2d 600, 604 (1963), and because enforcement is contrary to New York's policy of promoting free trade.[4] *See American Broadcasting Co. v. Wolf*, 52 N.Y.2d 394, 403, 420 N.E.2d 363, 367, 438 N.Y.S.2d 482, 486 (1981); *Mohawk Maintenance Co. v. Kessler*, 52 N.Y.2d 276, 283, 437, 419 N.E.2d 324, 328, 437 N.Y.S.2d 646, 650 (1981); *Columbia Ribbon & Carbon Manufacturing Co. v. A–1–A Corp.*, 42 N.Y.2d 496, 499, 369 N.E.2d 4, 6, 398 N.Y.S.2d 1004, 1006 (1977); *Borne Chemical Co. v. Dictrow, et al.*, 85 A.D.2d 646, 649, 445 N.Y.S.2d 406, 412 (2d Dep't 1981). New York courts will enforce a restrictive covenant in an employee-employer contract, however, if the employee is revealing trade secrets. *See Mohawk Maintenance Co. v. Kessler, supra,* 52 N.Y.2d at 284, 419 N.E.2d at 378, 437 N.Y. S.2d at 650.

■■■ Although defendant alleges that its form employment contract contains an anticompetitive clause, defendant has not produced a contract signed by plaintiff. Defendant suggests that production is un-necessary because all its employees are required to sign this contract. Defendant further argues that the covenant is enforceable because it (1) serves the legitimate purpose of protecting trade secrets and confidential materials, and (2) is reasonable because it is limited to a three-year period although worldwide in scope. The Court finds, however, that because defendant has failed to rebut this claim by establishing the existence of an express contract with a covenant not to compete and because plaintiff denies that he ever signed a contract with defendant which included a covenant not to compete, plaintiff is not bound by the contract and its anticompetitive clause.[5] Thus, the Court need not address the reasonableness of the restrictive covenant.

■■■ Defendant also claims that plaintiff's request for a preliminary injunction should be denied because he breached his duty of confidentiality and engaged in unfair competition by using defendant's trade secrets and by soliciting its customers while employed by defendant. Initially, the Court recognizes that a restrictive covenant is not necessary to enjoin plaintiff from appropriating defendant's alleged trade secrets because such conduct violates plaintiff's fiduciary duty to his former employer. *See Speedry Chemical Products, Inc. v. Carter's Inc.*, 306 F.2d 328, 332 (2d Cir.1962); *Velo-Bind, Inc. v. Scheck, supra,* 485 F.Supp. at 109. Thus, the Court must determine if defendant's teaching techniques and programs constitute trade secrets.

---

**4.** In a diversity action, a federal court must apply the substantive law of the state in which it sits. *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The Court notes that the complaint does not indicate defendant's state of incorporation but only its principal place of business, which is not New Jersey. Complaint, 83 Civ. 2731 (JMC) ¶ 2 (filed Apr. 8, 1983). Although Communispond is often referred to as a New York corporation, the parties do not dispute that New York law governs this action or the Court's jurisdiction.

**5.** There is no evidence of an oral contract by which plaintiff agreed not to compete with defendant, and assuming *arguendo* there was such a showing, the Court notes that the agreement would be barred by the Statute of Frauds. *See Lepel High Frequency Laboratories v. Capita,* 278 N.Y. 661, 16 N.E.2d 392 (1938) (per curiam).

The Court further notes that the restrictive covenant in question is not one to restrain the use of defendant's customer list even though plaintiff has solicited defendant's clients. Presumably, no claim of this nature was alleged because defendant publishes its customer list for publicity reasons and does not contend that its list is a trade secret. *See Columbia Ribbon & Carbon Manufacturing Co. v. A–1–A Corp.,* 42 N.Y.2d 496, 499, 369 N.E.2d 4, 6, 398 N.Y.S.2d 1004, 1007 (1977).

■ A trade secret has been defined as information known to only a few and not the general public, *see Leo Silfen, Inc. v. Cream,* 29 N.Y.2d 387, 394–95, 278 N.E.2d 636, 641, 328 N.Y.S.2d 423, 430 (1972); *see also Speedry Chemical Products, Inc. v. Carter's Inc., supra,* 306 F.2d at 331. New York recognizes that a trade secret need not be an isolated idea but may be "any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Restatement of Torts,* § 757(b) (1939); *see A.H. Emery Co. v. Marcan Products Corp.,* 268 F.Supp. 289, 299 (S.D.N.Y.1967), *aff'd,* 389 F.2d 11 (2d Cir.), *cert. denied,* 393 U.S. 835, 89 S.Ct. 109, 21 L.Ed.2d 106 (1968); *Eagle Comtronics, Inc. v. Pico, Inc.,* 89 A.D.2d 803, 453 N.Y.S.2d 470 (4th Dep't 1982). Similarly, the Second Circuit stated that "a trade secret can exist in a combination of characteristics and components, each of which, by itself, is in the public domain, but the unified process, design and operation of which, in unique combination, affords a competitive advantage and is a protectable secret." *Imperial Chemical Industries v. National Distillers Chemical Corp.,* 342 F.2d 737, 742 (2d Cir.1965). Defendant argues that its product fits within this definition of a trade secret, acknowledging that portions of its program have been published. Defendant relies heavily on *SmokEnders, Inc. v. Smoke Watchers International, Inc.,* 179 U.S.P.Q. 111 (N.Y.Sup.Ct.1973) ["SmokEnders"] to support its claim that its programs constitute a trade secret. First, the Court notes that in *SmokEnders, supra,* the program in question had not been published in various magazines. Second, the former employees in *SmokEnders* were financially successful once they established their own business, thereby posing a threat to their former employer. Defendant adduced no evidence to show that plaintiff as a sole practitioner has threatened defendant's position as the leader in this

aspect of the communications field. Third, *SmokEnders* fails to rely on any leading New York authority in this area. Accordingly, the Court finds that *SmokEnders* is not dispositive in the action at bar.

To determine whether defendant's product constitutes a trade secret, the Court must consider (1) how much of the program is known outside of its business; (2) how much of the program is known to defendant's employees; (3) what has been done to protect the secrecy of confidential information; (4) the value of the material to defendant and to its competitors; (5) the amount of time, effort and money spent in developing the material; and (6) how easily the material could be acquired or copied by others.

■ First, the Court observes that much of defendant's core program has already been published by defendant and others.[6] Having read several of these publications, the Court concludes that they inform the reader of defendant's core program including its sequence. Benchmark, eye/brain control and energy release are discussed in detail sequentially by participants in the program. Techniques employed in teaching, such as video tapes, ideographs and question-and-answer sessions are also discussed. In addition, without particularizing its teaching techniques, defendant cannot enjoin plaintiff from using "intangible procedures and techniques that [plaintiff] learned while [he was] employed by [defendant]." *Frederick Chusid & Co. v. Marshall Leeman & Co.,* 279 F.Supp. 913, 918 (S.D.N.Y.1968).

Second, defendant claims that it has sixty professional instructors who know its confidential information and trade secrets. The record indicates that some former instructors have established their own businesses and offer services in the same field. The record also establishes that defendant develops programs to fit the needs of individual clients and continually improves its

---

6. *Clark v. Bunker,* 453 F.2d 1006 (9th Cir.1972) is distinguishable from the instant action because in that case, alleged confidential matter was not published in magazines and there was "concealment, affirmative misrepresentation and commercial espionage." *Id.* at 1010.

programs. Thus, it is conceivable that defendant's programs have changed since plaintiff's termination.

Third, defendant has tried to protect its confidential information and trade secrets by requiring employees to sign an employment contract which contains an anticompetitive clause. Nonetheless, defendant's voluntary disclosure of the contents of the core program and the publication by others diminishes and defeats defendant's efforts to protect its confidential matter.

Fourth, as to the value of the material, defendant alleges that it has spent years perfecting its program and teaching techniques. Defendant has successfully given courses to executives in more than 50% of Fortune 500 corporations. Because defendant's competitors presumably attempt to distinguish their programs from defendant's, it is unclear how valuable such information would be to them and defendant has offered no evidence in this area. Finally, as previously stated, others can easily acquire what defendant deems confidential matter because this information has been widely published and is available to the public.

Furthermore, the Court notes that at least one of defendant's former employees—Jack McLinden—who developed communication programs at McLinden Associates, after reading articles in *Fortune* and *New York Magazine* about defendant's program, concluded that his programs are different than defendant's. Significantly, the distinctions between McLinden's programs and those of defendant are almost identical to the alleged differences between plaintiff's and defendant's programs. Accordingly, because defendant's programs are readily available to the general public through several magazine articles, the Court finds defendant's program, its sequences and teaching techniques are not trade secrets.

■ Plaintiff acknowledges and defendant does not dispute that he returned all written material to defendant when he re-signed. Nonetheless, if plaintiff merely reproduced defendant's material from memory, he may have misappropriated confidential material and breached his fiduciary responsibilities to his former employer. *See A.H. Emery Co. v. Marcan Products Corp., supra,* 268 F.Supp. at 300. With respect to the flip chart that is part of defendant's sales package, it appears that plaintiff uses flip charts to solicit customers, some of which are almost identical to defendant's charts.[7] Unlike the program itself, these charts or illustrations have not been published. Although the charts describe defendant's program which the Court finds is not a trade secret, the charts, however, represent "visuals" developed by defendant and constitute its work product. *See American Institute of Chemical Engineers v. Reber-Friel Co.,* 682 F.2d 382, 391 n. 10 (2d Cir.1982). Although differences exist between defendant's and plaintiff's charts, there are enough similarities for the Court to enjoin plaintiff from further using them.

■ Other than the flip charts, the Court finds that defendant has failed to establish that its programs and teaching techniques constitute trade secrets or that plaintiff disclosed confidential information. *See Columbia Ribbon & Carbon Manufacturing Co. v. A–1–A Corp., supra,* 42 N.Y.2d at 500, 369 N.E.2d at 6, 398 N.Y. S.2d at 1007.

The Court also notes that while plaintiff generally uses the same format as defendant, the programs are not identical. Plaintiff's program involves fewer participants and fewer instructors per course. Plaintiff does not use the ideographs or other techniques employed by defendant. Plaintiff also divides his class into small groups for various sessions.

David Sobel of Federal Reserve Bank, an employee with personal knowledge of both defendant's and plaintiff's courses, compared the programs and determined that they were different. Sobel reached this conclusion because of the above-mentioned

7. *See* Affidavit of Edward M. Fuller, Exhibits 1A–6B (June 10, 1983).

differences and because defendant's programs are taught at its professional studios which adds a certain quality to the course independent of the teacher. In addition, Sobel indicated that plaintiff's course focused on the orchestrating of meetings and presentation skills, while defendant's program was directed solely at the latter. Although defendant may have a separate course on conducting meetings, Sobel's statements indicate that defendant's program is appealing not merely for its substance but also because of defendant's facilities. Plaintiff is unable to offer a similar package as a sole practitioner without a studio. Moreover, (1) defendant's programs and techniques are not trade secrets, and (2) plaintiff's and defendant's programs are different. Plaintiff has neither breached a duty of confidence nor engaged in unfair competition by offering his services to potential clients. *See Leo Silfen, Inc. v. Cream, supra,* 29 N.Y.2d at 391–92, 278 N.E.2d at 639, 328 N.Y.S.2d at 427; *Wilkes v. Pioneer American Insurance Co.,* 383 F.Supp. 1135, 1141 (D.S.C. 1974).

█ Defendant further alleges that plaintiff engaged in unfair competition by soliciting defendant's clients while still employed by defendant. *See American Institute, supra,* 682 F.2d at 391. When deposed, plaintiff admitted that while employed by defendant he informed some of defendant's clients that he was considering starting his own business. While plaintiff's conduct does not constitute "solicitation," the Court does not condone such conduct. Although plaintiff developed business relationships with some of defendant's clients, there is no evidence, however, that plaintiff solicited business for himself or procured accounts while employed by defendant. Indeed, the present record shows that plaintiff's negotiations with potential clients began after his termination with defendant. *See Uniform Rental Di-*

*vision, Inc. v. Moreno,* 83 A.D.2d 629, 441 N.Y.S.2d 538 (2d Dep't 1981). Thus, the Court finds that plaintiff is offering his own programs rather than trying to sell the "Communispond" program. He is not engaging in unfair competition by "siphoning off" defendant's clients,[8] *see Velo-Bind v. Scheck, supra,* 485 F.Supp. at 109, or invading defendant's market by disclosing confidential information, *see Schreyer v. Casco Products Corp.,* 190 F.2d 921, 924 (2d Cir.1951) (patent infringement). Accordingly, the Court finds that defendant has failed to establish that plaintiff breached its duty of confidentiality or engaged in unfair competition. *See Quandt's Wholesale Distributors, Inc. v. Giardino,* 87 A.D.2d 684, 448 N.Y.S.2d 809 (3d Dep't 1982); *Continental Dynamics Corp. v. Kanter,* 64 A.D.2d 975, 408 N.Y.S.2d 801 (2d Dep't 1978).

Moreover, defendant has not shown that it lost business or customers as a direct result of plaintiff's conduct, militating against a finding that defendant has been irreparably harmed. *See Velo-Bind, Inc. v. Scheck, supra,* 485 F.Supp. at 109 (loss of revenue and customers). *Quandt's Wholesale Distributors, Inc. v. Giardino, supra,* 87 A.D.2d at 685, 448 N.Y.S.2d at 811.

In short, the Court finds that defendant's interference with plaintiff's solicitation of clients was not justified and hereby enjoins defendant from such further conduct. The record indicates that plaintiff is likely to succeed on the merits because defendant's program is not a trade secret; defendant failed to produce a contract signed by plaintiff with a covenant not to compete; and because defendant interfered with plaintiff's pursuit of his career. In addition, the balance of hardships tips decidedly in favor of plaintiff.

*Contempt Motion*

Plaintiff alleges that defendant is in contempt of Court for violating the Court's

8. The Court notes that the term "client" has been broadly construed by defendant. In essence, defendant deems its clients to include any entity which at some point in time participated through its employees in one of defendant's programs. Thus, even though there is no ongoing relationship, plaintiff presumably would be precluded from soliciting business from that entity.

April 26 Order that restrained either party from disclosing the existence or the content of the order to any client. The April 26 Order provided, however, that defendant had the right to engage in normal solicitation of clients. Plaintiff contends that defendant through its officer, Fuller, intentionally disclosed the existence of this litigation and other information gleaned from plaintiff's deposition to a Coopers' partner, Hirsch, at a meeting on May 25, 1983. Plaintiff learned of defendant's alleged disclosure from Horan, an employee of Coopers, who testified at the contempt hearing on July 15, 1983.

■ The inconsistencies between Horan's testimony and statements in his affidavit require the Court to give little credence to his version of the events. Horan constantly consulted with counsel while on the witness stand before he responded to questions, and even then, answered hesitantly. Thus, the Court does not rely on his account of the meeting. Furthermore, Hirsch and Fuller were at the meeting and have personal knowledge of what transpired. Plaintiff's version of the discussion in question merely rehashes what he was allegedly told by Horan. The Court, therefore, credits Fuller's testimony, Daley's affidavit and Hirsch's affidavit that Hirsch was briefly informed by Daley of this lawsuit on April 20, 1983, prior to the issuance of the April 26 Order. Therefore, defendant did not violate the Court's April 26 Order. Moreover, the Court sees no reason to discredit defendant's claim that none of its employees discussed the instant action with Hirsch or anyone else after the imposition of the April 26 Order.

Fuller's statements to Hirsch concerning Horan's moonlighting with plaintiff were made, however, after the April 26 Order. Nonetheless, the Court finds that plaintiff has failed to establish by clear and convincing evidence that defendant violated the April 26 Order. One purpose of the April 26 Order was to assure that defendant not interfere with plaintiff's business. With respect to Coopers, Hirsch flatly stated that Coopers was not interested in plaintiff's programs. In addition, defendant believed that Horan had a bias against it because of Horan's relationship with plaintiff. By revealing Horan's relationship with plaintiff, defendant claims that such conduct was within the purview of the Order because it was maintaining its relationship with Coopers.

While it is sympathetic to plaintiff's claims, because Hirsch knew of this action prior to the entry of the Order, and because Fuller in good faith believed that he was not prevented from disclosing that Horan was moonlighting with plaintiff, the Court finds that there is no clear and convincing proof that defendant intentionally violated the April 26 Order. See Powell v. Ward, 643 F.2d 924, 931 (2d Cir.) (per curiam), cert. denied, 454 U.S. 832, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981); Hudson Transit Lines, Inc. v. Freund, 509 F.Supp. 1172, 1175 (S.D.N.Y.1981).

With respect to plaintiff's claim that he lost business because defendant's disclosures caused Horan's refusal to work for plaintiff again, the Court finds that plaintiff failed to adduce clear and convincing proof that defendant intentionally violated the April 26 Order. Furthermore, the Court notes that the April 26 Order is ambiguous as to whether the parties are foreclosed from mentioning this action to clients who already are aware of its existence. See Perfect Fit Industries, Inc. v. Acme Quilting Co., 646 F.2d 800, 808 (2d Cir.1980), cert. denied, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 71 (1983). The record also indicates that defendant has diligently complied with the specific provisions of the April 26 Order with respect to its other clients.

■ In conclusion, because plaintiff did not establish that he was injured by defendant's conduct, see Vuitton et Fils, S.A. v. Carousel Handbags, 592 F.2d 126, 130 (2d Cir.1979), his request for damages is denied. Having determined that defendant did not violate the Order and that there was no willful conduct, the Court denies plaintiff's application for attorneys' fees and its motion to hold defendant in criminal and civil contempt of Court. See Hudson Transit Lines, Inc. v. Freund, supra, 509 F.Supp. at 1175.

■ Finally, with respect to defendant's application for attorneys' fees, the Court finds such an award unjustified and not in the interest of justice. *See Nichimen Co. v. M.V. Farland,* 462 F.2d 319, 333–34 (2d Cir.1972). There is nothing in the record to indicate that plaintiff brought this motion in bad faith.

## CONCLUSION

In accordance with the foregoing, plaintiff's motion for a preliminary injunction is granted and his contempt motion is denied. Fed.R.Civ.P. 65, 70. Plaintiff's application for attorneys' fees is denied.

Defendant's cross-motion for a preliminary injunction is granted in part and denied in part and its application for attorneys' fees is denied. Fed.R.Civ.P. 65.

Parties are directed to appear in Courtroom 1106 on December 1, 1983 for a pretrial conference.

SO ORDERED.