**Vincent D. ADAMS, as Administrator of the Estate of Vincent Darrel Adams, Jr., Deceased, Plaintiff,**

**v.**

**William Carrol HUNTER, Defendant.**

**Civ. A. No. 71–433.**

United States District Court, D. South Carolina, Charleston Division.

Argued June 19, 1972.

Decided June 21, 1972.

Robert B. Wallace, J. Kenneth Rentiers, and O. Eugene Savedge, Charleston, S. C., for plaintiff.

Robert A. Patterson, of Barnwell, Whaley, Stevenson & Patterson, Charleston, S. C., for defendant.

HEMPHILL, District Judge.

This is an action seeking damages for the death of Vincent Darrel Adams, Jr. (hereafter often referred to as Darrel), as a result of injuries received in an automobile collision on April 7, 1970. This action is brought pursuant to Title 10, Section 1951–56 [1], of the Code of Laws for South Carolina, 1962, known as the Wrongful Death Statute of South Carolina. This action was commenced by the Administrator, a resident of South Carolina, for the benefit of Vincent D. Adams, Sr. and Mary M. Adams, the parents of the deceased. The defendant is a resident of the State of Florida. The court has jurisdiction [2] by virtue of diversity of citizenship, and a bona fide demand in excess of diversity minimum ($10,000.00).

The Complaint alleges that the deceased died as a result of the negligence,

---

[1]. Section 10–1951, South Carolina Code, 1962, Anno. provides:

Civil action for wrongful act causing death.—Whenever the death of a person shall be caused by the wrongful act, neglect or default of another and the act, neglect or default is such as would, * * if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, although the death shall have been caused under such circumstances as make the killing in law a felony. In the event of the death of the wrongdoer, such cause of action shall survive against his personal representative.

Section 10–1952. Beneficiaries of action for wrongful death.—Every such action shall be for the benefit of the wife or husband and child or children of the person whose death shall have been so caused, and, if there be no such wife, husband, child or children, then for the benefit of the parent or parents, and if there be none such, then for the benefit of the heirs at law or the distributees of the person whose death shall have been so caused. Every such action shall be brought by or in the name of the executor or administrator of such person.

[2]. 28 U.S.C.A. Section 1332.

carelessness and recklessness of the defendant in the operation of a motor vehicle on U.S. Highway 17 situate in the County of Charleston, just east of the Cooper River Bridge and west of the Town of Mount Pleasant.

By his Answer, defendant denied the material allegations of the Complaint and alleged contributory negligence and recklessness on the part of the deceased who was driving the motor vehicle which collided with the defendant.

At the trial of the case on June 19, 1972, before the court, without a jury, the defendant admitted liability for actual damages, leaving the only issues to be determined by this court to be the amount of actual damages, and liability for as well as the amount of punitive damages.

Counsel, at trial, also stipulated that Darrel Adams, Jr., died as a result of the collision of April 7, 1970. Other stipulations were to the effect that defendant, a 51-year old male, driving a 1971 Dodge Coronet, which he had rented from Avis Rentals, was given a blood-alcohol test[3]; if the physician who was present and performed the test were to testify he would testify that there were 14.2 one-hundredths of one percent, by weight, of alcohol in defendant's blood according to the test.[4] On January 11, 1971, the defendant having

been at the December, 1970 term of General Sessions Court for Charleston County, S. C., indicted for (1) involuntary manslaughter and (2) reckless homicide, did thereafter on the 11th day of January 1971 appear in person before that court and enter a plea of guilty to involuntary manslaughter.

The plaintiff presented several witnesses and numerous exhibits. The defense did not offer any evidence, but made certain admissions.

Upon the credible testimony, the exhibits, and the admissions, the court publishes the following:

## FINDINGS OF FACT

1. Darrel Adams, Jr., at the time of his death on April 7, 1970, was nineteen (19) years of age, having been born on February 7, 1951. He was a senior at Moultrie High School and had been accepted at The Citadel as a college student for the September, 1970 term. His sole beneficiaries under the Wrongful Death Statute of South Carolina are his mother and father, for whose benefit the action was brought. Deceased was not married and had no other dependents. Surviving are a younger brother, and two sisters, the older married, a younger single.

2. Darrel Adams, Jr., was an unusual young man. The evidence shows him to

---

3. Section 46–344(a), S.C.Code, 1962, Anno., provides:

Implied consent to chemical test to determine alcoholic content of blood; manner of administering test; presumptions from alcohol in blood; suspension of driver's license for refusal to take test.— (a) Any person who operates a motor vehicle upon the public highways of this State shall be deemed to have given consent to a chemical test of his breath for the purpose of determining the alcoholic content of his blood if arrested for any offense arising out of acts alleged to have been committed while the person was driving a motor vehicle while under the influence of intoxicating liquor. The test shall be administered at the direction of a law-enforcement officer who has apprehended a person while driving a motor vehicle upon the public highways of this

State while under the influence of intoxicating liquor. The test shall be administered by a person trained and certified by the South Carolina Law Enforcement Division, using methods approved by the South Carolina Law Enforcement Division. The arresting officer shall not administer the test and no such test shall be administered unless the defendant has been informed that he does not have to take the test but that his privilege to drive will be suspended or denied if he refuses to submit to the test.

4. Section 46–344(b) (3) provides:

If there was at that time ten one-hundredths of one percent or more by weight of alcohol in the defendant's blood, it shall be presumed that the defendant was under the influence of intoxicating liquor.

have had all of the attributes of a "dutiful son", and a joy to his mother and father, for whom he had great affection, and each had great affection for him. He was bright, friendly, productional and personable. The evidence shows that he was not only attentive to their wants and their needs, but especially generous on the occasion of their birthdays and other like anniversaries. He was obedient, respectful, devoted and unusually helpful to his father. He was an active figure in a closely knit family. He performed well in his school work; he had what is known as senior privileges, the privilege of leaving school during the lunch hour every day, if he wished. The uncontradicted testimony is that he worked with his father after school and during vacations. Almost every school day, during his lunch period, or at other times, he would stop by the real estate office in Mount Pleasant where his mother was employed on a casual basis, to visit with her and express his interest in and attention to her. Out of his own funds he provided for his own clothing, his automobile, transportation and many other necessaries of life. His parents provided his board and lodging. He had previously been an acolyte in the Episcopal church in which he had been confirmed. He attended church regularly, and had been active in the Boy Scouts of America.

3. Deceased, while a fulltime student, earned $1968.25 in 1968, $2100.50 in 1969, and between January 1st, 1970, and the time of his demise, April 7, 1970, had earned $468.62 while working after school. He had not earned as much during this period of 1970 by virtue of the fact that he was participating in the sport of wrestling in the high school which he attended. He was a senior student at Moultrie High School in Mount Pleasant, South Carolina.

4. Not only did the young man observe unique relationships with his mother, but he also had an unusual relationship with his father. Mr. Adams, Sr., although a licensed engineer, left the engineering field to engage in and purchase his own business, Charleston Yacht Sales, for the purpose of assembling, displaying, selling and enjoying the use of sailing yachts. This became a family venture, both economically and for pleasure. At a very early age, Darrel became an intricate part of this business. The uncontradicted testimony that he was qualified and experienced as a scuba diver, was qualified and experienced in the operation and repair of all boats, motorized and sailing vessels, used in the business of his father and was qualified to commission and to prepare boats for display and sales. He planned and was fully prepared to go into fulltime business operation with his father as an equal partner. His expected compensation [5] after he reached maturity, could not be considered in this case, but the expectation of the father, of the enjoyment of his son as an associate over the period of years, can well be considered in endeavoring to properly measure the loss to a father of a son as close to him as this young man was to his father.

5. U. S. Highway 17 is the originally all-purpose route from Charleston, South Carolina, to Georgetown, South Carolina. At the time of the accident in question, it was a four-lane highway, stretching from the intersection of the road to Sullivan's Island and the Isle of Palms on the east to the Cooper River bridge approach on the west. Between the bridge over Shem Creek, and Mount Pleasant, and the Cooper River bridge, the highway is four lanes, and at the scene of the accident, an intersection of Highway 17 and Mathis Ferry Road is on the northside of Highway 17 and a Gate Service Station is on the south side of the artery.

6. On the fatal day in question, Darrel Adams, Jr., and a friend of many

---

5. See Brooks v. United States (D.S.C. 1967), 273 F.Supp. 619, as to the controlling principles. Limit in this action would expire when Darrel reached 21, this despite his plans to attend The Citadel for four years.

years, by the name of Charles Northcutt, took the senior privileges during the lunch hour at Moultrie High School in Mount Pleasant, South Carolina. They left the school grounds in a Volkswagen bus, which Darrel had purchased with his own money. The first stop, approximately 12:15 or 12:20 was at Darrel's mother's office, a real estate office on U. S. Highway 17. After spending 5 or 10 minutes with his mother, he left in his Volkswagen headed westward enroute to the Highway Marine Shop, which would entail crossing the Cooper River bridge and going into or about Charleston. He was in his proper lane of traffic; there is no testimony but that he was driving carefully and within normal speed limits. He was in the inside lane where he had every right to be. Northcutt testified he noticed a Dodge 1971 Coronet at the Gate Service Station which also was on the south side of Highway 17 contiguous thereto, which would be on the left side of young Adams as he drove toward Charleston. When Northcutt saw the car it was parked in the exit ready to enter the highway, with the front wheels in the gutter.

7. As young Adams' Volkswagen reached the point opposite the Gate Service Station, the 1971 Dodge shot out from the Gate Service Station and ran onto and into collision with the Volkswagen. Northcutt was thrown out of the vehicle, and, presumably Adams was too. Adams died as a result of the injuries sustained in the collision.

8. At the time of his death Adams was in good health and spirits and had a life expectancy of 51.28 years under Section 26–12 [6] Code of Laws for the State of South Carolina. There is nothing to show other than he would have lived for most of that period of time.

9. The gross negligence, willfulness, and wantonness of defendant is apparent on the face of the record. Under the statute [7] he is presumed to have been intoxicated as evidenced by the alcohol in his blood shortly after the accident. He failed to yield the right-of-way. His driving gave every evidence of recklessness. It takes no clairvoyance to vision his reckless dash onto the highway into the path of the deceased's Volkswagen.

. 10. Defendant has formally admitted liability, and has withdrawn his affirmative defense of contributory negligence and recklessness. It remains for this court to make a determination of the extent of that liability, the amount of damages.

11. This collision resulted when the defendant attempted to leave a service station on the southside of Highway 17, a four-lane highway, by crossing two lanes of traffic traveling in an easternly direction and two lanes for traffic traveling in a westernly direction. The collision occurred in the westbound lane nearest the center line where the deceased was traveling in a westernly direction toward the City of Charleston. Defendant was guilty of gross recklessness in that he failed to keep a proper lookout, failed to yield the right-of-way, and completely ignored oncoming traffic while intoxicated. Section 16–55.1, South Carolina Code of Laws, 1962, as amended, is applicable for this action in its definition of involuntary manslaughter. That section provides, among others, as follows:

> With regard to the crime of involuntary manslaughter, criminal negli-

---

6. Section 26–12. Mortuary table—When it is necessary, in any civil action or other mode of litigation, to establish the life expectancy of any person from any period in his life, whether he be living at the time or not, the table below shall be received in all courts and by all persons having power to determine litigation as evidence (along with other evidence as to his health, constitution and habits) of the life expectancy of such person. In determining a person's age as of any particular time periods of six months or more beyond the last full year shall, in using the table below, be treated as one year.

| Age | Expectancy |
|---|---|
| 19 | 51.28 |

7. See footnote 4, supra.

gence is hereby defined as the reckless disregard of the safety of others.

## AND
## CONCLUSIONS OF LAW

A. This court has jurisdiction of the parties, the controversy and the subject matter of this action.

B. ▉ The defendant has admitted liability, which, in effect, is an admission of the negligence of the defendant, as a proximate cause of the fatal accident in question. Not only does this court find from the facts that the defendant consciously failed to use due care, but that the defendant drove his automobile in violation of the statute laws of the State of South Carolina. He clearly violated Section 46-424 [8] South Carolina Code of Laws for 1962, as amended, in failing to yield the right-of-way in driving the Dodge into the highway from a private road or driveway. He was driving while intoxicated in violation of Section 46-344 of the South Carolina Code of Laws for 1962, as amended. By his plea of guilty he admits that he was driving with the reckless disregard of the rights of others on the highway [9]. Violations of a statute in South Carolina constitute negligence, and are evidence of recklessness. This court concludes as a matter of law that defendant was guilty of gross negligence, or recklessness in his willful disregard of the rights of others as he entered Highway 17 from the Gate Service Station. Willfulness has been defined as a conscious failure to use due care. Turner v. Sinclair Refining Co. (1970), 254 S.C. 36, 173 S.E.2d 356. Causative violation of an applicable statute constitutes actionable negligence and is evidence of recklessness and willfulness.

Jowers v. DuPriest (1967), 249 S.C. 506, 154 S.E.2d 922. The test by which a tort is characterized as "reckless, willful or wanton" is where it has been committed in a manner and under the circumstances that a person with ordinary reasonable prudence would have been conscious of it as an invasion of another's rights. Suber v. Smith (1964) 243 S.C. 458, 134 S.E.2d 404. "Recklessness" means the doing of a negligent act knowingly, and a person is "reckless or willful and wanton" when he consciously fails to exercise due care. Yaun v. Baldridge (1964) 243 S.C. 414, 134 S.E.2d 248. Not only did the negligent acts of the defendant proximately cause the fatal accident in question, but they trumpeted a course of conduct which was willful, wanton and reckless in the highest degree.

C. Initially, this court faces the issue of the measure of damages which flow from the wrongful death of the deceased. These are classified as consequential or actual damages. The measure of actual damage for wrongful death is governed by the South Carolina Death Statute (Section 10-1951 et seq. S.C.Code, 1962, Anno.). The statute provides damages in proportion "to the injury resulting from such death to the parties respectively for whom and for whose benefit such action shall be brought" are recoverable. In an excellent article on "The Value Of A Child" as published in the South Carolina Law Review, Volume 24, Number 1, page 86, the author [10] correctly points out that South Carolina statutory provisions are similar to those of England and other States which limit recovery to pecuniary loss, but the South Carolina case law has expanded the elements of injury which are compensable.[11] Citing *Mishoe* (see

---

8. Section 46-424, S.C.Code for 1962, provides:
 Vehicle entering highway from private road or driveway.—The driver of a vehicle about to enter or cross a highway from a private road or driveway shall yield the right of way to all vehicles approaching on such highway.

9. Section 16-55.1, South Carolina Code, 1962, Anno.

10. James Boyce Pressley, Jr.

11. Mishoe v. Atlantic Coast Line R. Co. (1938), 186 S.C. 402, 197 S.E. 97.

footnote) it recites the general elements of actual damages recoverable as (1) pecuniary loss, (2) mental shock and suffering (3) wounded feelings, (4) grief and sorrow (5) loss of companionship, and (6) deprivation of the use and comfort of the intestate's society, the loss of his experience, knowledge, and judgment in managing the affairs of himself and of his beneficiaries, in addition to the loss of his ability to earn money for the support, maintenance, care and protection for his wife and children, and for the education and training of the latter.

D. ██ Of the elements of damages thus enumerated, only "pecuniary loss" to the beneficiaries lends itself to any rough formula of rationalized calculation. However, the presumption of a pecuniary loss as in the case of a widow and surviving children (Ellison v. Simmons, 1961, 238 S.C. 364, 120 S.E.2d 209), does not arise in a case involving the wrongful death of a minor child, therefore, making proof of actual loss necessary for recovery for pecuniary loss. Mock v. Atlantic Coast Line R. Co., 227 S.C. 245, 87 S.E.2d 830 (1955); Patrick v. United States, 316 F.2d 9 (4th Cir. 1963); Gregg v. Coleman, 235 F.Supp. 237 (D.C.1964).

E. The formula used in the Brooks [12] case is not applicable for determining pecuniary loss in the case of a minor, therefore, making the method of proof in such a case unclear. However it is clear that the plaintiff in the present action is entitled to some pecuniary loss. Contribution to the family has been shown. No matter what amounts or types of contribution are shown, damages are recoverable only for the period of the child's minority and for such benefits after minority as are probable and reasonably certain from the evidence. This court hereby determines that the amount of pecuniary loss should be set at $4500.00.

F. The remaining elements of damage consist of (1) mental shock and suffering, (2) wounded feelings, (3) grief and sorrow, (4) loss of companionship, and (5) deprivation of the use and comfort of the intestate's society. Funeral expenses are compensable in such an action also. Section 10–209.1, S.C.Code Anno. (1970 Supp.). Plaintiff is entitled to recover funeral expenses in the amount of $1273.80 and the marker expense of $88.40.

G. This court has endeavored to review those South Carolina cases in which the subject of compensable (actual) damages have been awarded for the death of a minor. Zorn v. Crawford (1969), 252 S.C. 127, 165 S.E.2d 640; Mock v. Atlantic Coast Line R. Co. (1955), supra; Gomillion v. Forsythe (1950), 218 S.C. 211, 62 S.E.2d 297; Brooks v. United States, supra; Hicklin v. Jeff Hunt Machinery Co. (1955), 226 S.C. 484, 85 S.E.2d 739; Mishoe v. Atlantic Coast Line R. Co. (1938, supra), and others. This review has only compounded the heavy responsibility of this court. We can use the mortuary table only to the extent that, in all likelihood, the young man, healthy and hearty, would outlive each and both his parents. Their loss could extend only over the lifetime of the two of them and the survivor. The court would avoid the brutality of saying "what the young is actually worth." Rather it will, in the light of the circumstances of this case, attempt to evaluate the loss in applying the elements proscribed in Mishoe, supra. The father and mother were each 45 years of age at the time of his death, and each has a life expectancy of 27.81 years. It may be that, despite the wound this loss has left on their hearts as parents, that either, or both might exceed the expectancy. But this court cannot avoid the reasoning that the statute is the law, and the only evidence, in this record (along with their health, constitution and habits as the testimonies and appearances revealed) of their time of grief and sorrow, loss of companionship, and deprivation of the use and comfort of the intestate's society.

12. Brooks v. United States, supra.

Attempting to place a separate value on the elements listed (excepting pecuniary loss, already assessed) would, in this case, be of no more accuracy than a judgment as to the whole loss to these parents (beneficiaries) because of the mental shock and suffering, wounded feelings, grief and sorrow, loss of companionship and deprivation of the use and comfort of Darrel's society, the loss of his experience and knowledge. This court cannot but reckon that they would not take the gold in Fort Knox for their son. This last is not the measure, then, but what is a reasonable, adequate amount under the circumstances.

H. ■ The unusual qualities of this fine young man, the host of evidence and circumstances before this court convince this court that a jury would award a substantial sum, perhaps more than this court. In considering all the elements, other than pecuniary loss and funeral expenses, this court concludes One Hundred Twenty-Five ($125,000.00) Thousand Dollars would be appropriate and just.

I. With regard to the question of liability for punitive damages and the amount thereof, the Supreme Court of the State of South Carolina has held in a number of cases, that where a defendant is found to be guilty of recklessness, that is, the reckless disregard of the safety of others, that a jury, or court, has the duty to impose punitive damages as well as actual damages. Hicks v. Herring, 246 S.C. 429, 144 S.E.2d 151; Sample v. Gulf Refining Company, 183 S.C. 399, 191 S.E. 209. Here, the defendant admits, by his plea that he is guilty of conduct constituting the reckless disregard of the safety of others. Notwithstanding his plea, this court has found as a matter of fact and concluded as a matter of law that the defendant is guilty of gross recklessness.

J. ■ While some courts do not approve of punitive damages, the State of South Carolina, under whose law this case is tried, continues to adhere to the principals for which punitive damages are allowed. Punitive damages are allowed to vindicate a private wrong, to punish the wrongdoer, and to set an example for other persons. Gilbert v. Duke Power Company (1971), 255 S.C. 495, 179 S.E.2d 720. The amount is determined by the character of the tort committed, punishment which should be applied and ability to pay. Hicks v. Herring, supra.

K. ■ The defendant here is employed as a merchant seaman, and as a consequence was not able to attend court when this case was originally set for trial during both of the last two terms of this court. The court takes judicial notice of the general income of merchant seamen. There has been no testimony offered by the defendant as to his financial obligation or the number of his dependents. "Wealth of a defendant is relevant but not necessarily [a] controlling factor in assessing punitive damages," Hicks v. Herring, supra.

L. ■ The facts in this case would justify an extremely high award for punitive damages as the undisputed evidence demonstrates that the defendant was grossly intoxicated at 12:30 p. m. on a Tuesday afternoon, and drove into a four lane highway in the face of traffic, with a completely unobstructed view. This court is convinced that a jury should and would impose a substantial award against this defendant as punishment for his conduct, particularly in view of the fact that he received a suspended sentence under the criminal prosecution.

M. This court therefore finds that an award in the amount of Twenty-Five Thousand ($25,000.00) Dollars for punitive damages is justified and proper.