19837

McRae KIRKLAND and George Kaney, Respondents, v. HARDWICKE CHEMICAL COMPANY, Appellant.

(205 S. E. (2d) 881)

*Messrs. Nexsen, Pruet, Jacobs & Pollard,* of Columbia, *for Appellant,*

*Messrs. Lourie, Draine and Curlee,* of Columbia, *for Respondents,*

June 6, 1974.

Moss, Chief Justice:

McRae Kirkland and George Kaney, the respondents herein, brought this action against Hardwicke Chemical Company, the appellant herein, to recover damages for the deprivation of use and enjoyment of their property arising from the alleged negligent pollution of Spears Creek in Kershaw County. It appears that Spears Creek bisects a tract of land owned by Kirkland and in which Kaney has a leasehold interest. Hardwicke operates a chemical plant on Spears Creek and at this location the creek is three to four feet wide and one and one-half to two feet deep. The property of the respondents is some six miles downstream from this plant, at which point the creek is sixty to seventy feet wide, with a maximum depth of twenty feet. There are four or more tributaries which drain into Spears Creek between the property of the appellant and that of the respondents.

This case came on for trial before the Honorable John Grimball, presiding judge, at the 1973 May Term of the Court of Common Pleas for Kershaw County, resulting in a verdict for the respondents for actual damages.

At appropriate stages of the trial motions for nonsuit and directed verdict were made and denied. Following the trial the appellant moved for judgment *non obstante veredicto,* or in the alternative for a new trial. These motions were also denied.

The appellant asserts error on the part of the trial judge in refusing its motions for nonsuit, directed verdict and judgment *non obstante veredicto,* because the respondents failed to prove that the appellant's operation was a proximate cause of their damages. In consideration of this question we are required to view the evidence in the

light most favorable to the respondents. However, when only one reasonable inference can be drawn from all of the evidence, then the question becomes one of law for the court and there is no issue for submission to the jury, and it is the duty of the trial judge to direct a verdict.

There is testimony that in May and October of 1970, ■ fish kills occurred in Spears Creek within the boundaries of the property of the respondents. The South Carolina Pollution Control Authority was contacted and investigators were sent to the scene. No analysis was made of the water or the fish on either occasion to determine the cause of the kills. The only evidence introduced by the respondents on the issue of causal relationship between the appellant's operation and the fish kills was the testimony of respondent Kaney. His testimony was to the effect that at the times in question he found numerous dead fish in the stream and there was a foul odor emanating from the water which was covered by an oily film, but he made no effort to testify as to what caused the fish kills.

The respondents placed on the witness stand George A. Rhame, Assistant Director of the South Carolina Pollution Control Authority, who testified that there was a fish kill in Spears Creek in May, 1970, but he had no knowledge of the cause of the death of the fish or of any problem in controlling waste at the plant of the appellant. He did testify that he sent two representatives of the Authority to investigate the reported fish kill. These men could have taken specimen fish and water samples at this location and had a chemical and bacteriological analysis made which would have determined, with a reasonable degree of certainty, the cause of the death of the fish and whether or not any pollution by the appellant brought about the fish kill. The respondents offered no evidence that any such tests were made.

James Hudgens, a biological consultant with the South Carolina Pollution Control Authority, testified in behalf of the respondents. This witness left the employ of the Au-

thority on March 3, 1970, and his testimony was concerned only with matters occurring four months or more prior to the 1970 May fish kill. This witness had never observed the fish kills, or analyzed the water at the location of the respondents' property. He testified that in October, 1969, samples of water were taken two miles downstream from the plant of the appellant and were referred to the State Board of Health Laboratory for analysis. He further testified, over objection, that the water so tested contained toxic benzyl alcohol and that fish in contact therewith would die or be at least very severely impaired within twenty-four hours. He also testified that the last grab sample was taken on January 9, 1970, and that he could not conclude from this test that the chemical waste or benzyl alcohol was not being properly controlled. The only conclusion that can be drawn from the testimony of Hudgens is that the tests and information reported by him were too remote to establish any causal connection between the alleged pollution by the appellant and any damage sustained by the respondents.

The appellant presented testimony by Otho D. Maye, Jr., a qualified fish biologist with the South Carolina Wildlife Department. He testified that fish kills could result from natural causes as well as man-made causes, including runoffs of insecticides and herbicides from fields, careless rinsing of spray equipment by farmers, the discharge of garbage into streams, as well as bacterial diseases, any one of which could cause fish kills. He further testified that there were many ways in which fish kills could occur and that an appropriate test would have to be made at the time the fish were dying or shortly thereafter in order to determine the actual cause of the fish kill. He also said that it was almost impossible to pinpoint the cause of a fish kill and that under normal conditions where a complete fish kill occurs it would take a stream between two and three years to fully recover. This witness testified that he made a survey, in May of 1971, of Spears Creek upstream and downstream from the property of the respondents, and found a normal healthy fish

population. He also testified that had the fish kills been the result of a discharge of chemicals from the plant of the appellant, the food source in the creek would have been destroyed and the fish population could not have, in such a short period of time between the survey and the two fish kills, regenerated or restocked in the quantity or the condition he had observed. From the survey this witness concluded that the fish kills complained of were not the result of any pollution by the appellant and that he, in fact, found nothing to indicate any pollution in the stream.

It is elementary that in order for the respondents to recover damages, the burden was upon them to show that such was caused by the actionable negligence of the appellant. Considering all of the evidence in the light most favorable to the respondents, it is our opinion that there was not sufficient evidence of negligence on the part of the appellant requiring that issue to be submitted to the jury. The only reasonable conclusion is that there was no pollution by the appellant that was a proximate cause of the fish kills. The evidence in this case is susceptible of only one reasonable inference, that being that the appellant was not guilty of any negligence. This being true, the trial judge should have so declared as a matter of law.

The judgment of the lower court is reversed and the case remanded thereto for the purpose of entering judgment in favor of the appellant.

Reversed and remanded.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.