## 20150

Robert W. LUCHT, as Administrator of the Estate of Eileen H. Lucht, Respondent, v. John S. YOUNGBLOOD, a minor over the age of fourteen (14) years and George L. Youngblood, Appellants.

(221 S. E. (2d) 854)

*Messrs. Brockinton & Brockinton,* and *Howe & Regan,* of Charleston, *for Appellants,*

130

*George E. Campsen, Jr., Esq.,* of Charleston, *for Respond-ent,*

*Messrs. Brockinton & Brockinton,* and *Howe & Regan,* of Charleston, *for Appellants,* in Reply.

Jan. 20, 1976.

NESS, Justice:

Eileen Lucht, a sixteen year old girl, was killed when a Volkswagen automobile in which she was riding collided with a Ford Mustang automobile driven by John Youngblood, and owned by his father, George Youngblood. The administrator of the estate of the deceased instituted a wrongful death action for her statutory beneficiaries, alleging the accident was caused by the negligence of the driver of the Ford, and that the father was liable under the Family Purpose Doctrine. The appellants plead sole negligence of the driver of the Volkswagen and other defenses not important in this appeal. A jury verdict against both appellants for $168,000.00 actual damages has occasioned this appeal.

Apellants contend: (1) that the evidence taken as a whole failed to establish actual negligence; (2) the court erred in holding that the Family Purpose Doctrine applies as a mat-

ter of law; (3) the court erred in prohibiting the appellants from cross examining the plaintiff on his earlier pleadings in this case; (4) the jury verdict was the product of passion and prejudice and the court erred in not setting it aside and granting the appellants a new trial absolute. None of these exceptions require reversal.

■ In considering motions challenging the sufficiency of the evidence to present the case to the jury, we review the evidence most favorable to the plaintiff. *Mahaffey v. Ahl,* 264 S. C. 241, 214 S. E. (2d) 119 (1975).

This nighttime collision occurred in June, 1973, at a gentle, S-curve, on a four lane street, divided by a double yellow line, in the City of Charleston, South Carolina. The Volkswagen in which the plaintiff's intestate was a passenger, was proceeding north in the inside lane. It collided with the Mustang which was proceeding south in its inside lane.

The plantiff contends the Mustang crossed the yellow line and the impact occurred in his lane. In support of this contention, the plaintiff introduced evidence that most of the debris was found in his lane; and that both vehicles after the collision were turned sideways in the plaintiff's lane, only the rear wheel of the Mustang straddling the yellow line. In addition, the plaintiff introduced a portion of the defendant driver's deposition in which he testified, "I didn't have time enough to cross that yellow line by much."

■ Certainly the circumstantial evidence, combined with the admission of the defendant, was sufficient for the jury to conclude the accident was caused by the defendant's crossing the double yellow line in violation of the South Carolina Code, Section 46-389 and 46-390 (1962).[1]

---

[1] The defendant and his witnesses testified the driver of the Volkswagen was in the defendant's lane and the defendant, presented with a sudden emergency, swerved to the left and crossed the yellow line in an effort to avoid a head on collision. The jury was charged the law of sudden emergency. If the defendant was presented with a sudden emergency, the jury could have concluded that he failed to respond as a reasonable man under the circumstances. In addition, the jury may have concluded that due to the deceiving nature of the S-curve, the defendant erroneously concluded the Volkswagen was in the defendant's lane when it was in its own lane.

*Richardson v. Williamson,* 256 S. C. 134, 181 S. E. (2d) 262 (1971).

Next, the appellants argue the trial judge erred in directing a verdict against George Youngblood, the father, on the issue of the Family Purpose Doctrine. Under this doctrine, a head of a family, who owns, furnishes and maintains a vehicle for the general use, pleasure and convenience of his family is liable for the negligence of a member of the family having general authority to operate the vehicle for such a purpose. *Lollar v. Dewitt,* 255 S. C. 452, 456, 179 S. E. (2d) 607 (1971).

In their second amended answer the appellants admitted the son was driving the car with the consent of the father. Further, the testimony is uncontradicted that the boy was· seventeen years old and a student living at home with his parents. The father agreed he bought the car for the use of his son, and that it was used practically exclusively by the son except on occasions when the father drove the car. [2]

While ordinarily the applicability of the Family Purpose Doctrine is a question of fact for the jury, here, by the pleadings and uncontradicted tetsimony, no factual issue was created. Therefore, the question was one of law and the trial judge correctly directed a verdict in favor of the plaintiff. *Davis v. Littlefield,* 97 S. C. 171, 81 S. E. 487 (1913); *Kirkland v. Hardwicke Chemical Company,* 262 S. C. 520, 205 S. E. (2d) 831 (1974).

The appellants also argue the Family Purpose Doctrine has been superseded by the Motor Vehicle Financial Responsibility Act, South Carolina Code, Section 46-7.50.31; 46-701 (1974) Cum. Supp.) The Family Purpose Doctrine is an expansion of the concept of agency. *Norwood v. Parthemos,* 230 S. C. 207, 95 S. E.

---

[2] Each of the three members of the family generally operated separate cars, the appellant asserts the Family Purpose Doctrine applies only when a maximum of two cars are owned and used interchangeably. We disagree.

(2d) 168 (1956). The Act does not specifically or by implication repeal the line of cases of *Porter v. Hardee,* 241 S. C. 474, 129 S. E. (2d) 131 (1963) and *Reid v. Swindler,* 249 S. C. 483, 495, 154 S. E. (2d) 910 (1967). This exception is overruled.

Next, appellants argue the trial court erred in prohibiting them from cross examining the plaintiff on his earlier pleadings in this case. The plaintiff proceeded to trial on a second amended complaint in which he alleged the Volkswagen was driving in its proper lane and it collided with the Mustang which crossed the double yellow line. In an earlier pleading the plaintiff had alleged the driver of the Volkswagen had crossed the center line and that his negligence, combined with the negligence of the appellant, caused the death of the plaintiff's intestate. The complaint was amended after the driver of the Volkswagen was released by a covenant not to sue. The appellant hoped to discredit the plaintiff by showing his present position was inconsistent with his earlier pleadings.

Generally, the prior pleadings in an action may be received in evidence against the pleader. *Young v. Martin,* 254 S. C. 50, 58, 173 S. E. (2d) 361 (1970). The trial judge refused the cross examination because he was concerned it would run afoul of the mandate of *Powers v. Temple,* 250 S. C. 149, 155, 156 S. E. (2d) 759 (1967). In *Powers* and the later case of *McCombs v. Stephens,* 252 S. C. 442, 166 S. E. (2d) 814 (1969) this Court held that when a covenant not to sue has been entered into, evidence of the amount involved should not be presented to the jury, at least where there are no fact questions concerning the covenant for the jury's determination.

The parties agreed that the covenant not to sue was entered into for the sum of $7,000.00. The trial judge excluded the cross examination. He felt if the defendant questioned the plaintiff about the prior pleading, the jury

would have necessarily been informed that another defendant had been released by covenant not to sue.

Appellants assert they did not desire to inform the jury of the existence or the amount of the covenant, but only to examine the plaintiff on the prior inconsistent pleading. The trial judge was rightfully concerned that if the defendants were examined on the prior pleadings, the existence of the covenants and its details would be spread before the jury. Obviously, this would be confusing to the jury and it might easily become emersed in the merits of the liability of the defendant released by the covenant.

While this is a difficult issue to handle, the trial judge should have permitted the cross examination on the pleadings. If the judge thought the release on a covenant was becoming involved, he should stimultaneously charge the jury that a plaintiff may choose which defendant he wishes to sue and that if any actions against a former defendant are relevant, they would be a matter for the court and not for the jury.

Although the defendant should have been permitted to cross examine the plaintiff on his prior inconsistent pleading, the refusal of such is not reversible error. The pleadings were prepared by counsel at the direction of the administrator. The administrator was not a witness to the accident and would have no way of knowing what transpired except from talking with witnesses. Accordingly, any impeachment would have been of no value and constitutes harmless error.

Finally, appellants contend the verdict of the jury is so grossly excessive as to show that it was actuated by passion, prejudice, sympathy, and partiality and it is so shocking as to require a new trial absolute.

The jury awarded the plaintiff $168,000.00 actual damages and the trial judge, upon a motion of the defendants, reduced it to $110,000.00. The trial judge deducted $7,000.00

received by the plaintiff on the covenant not to sue, leaving a total judgment against the defendant of $103,000.00.

The appellants, relying on *Zorn v. Crawford,* 252 S. C. 127, 165 S. E. (2d) 640 (1969), assert this verdict exceeds any amount previously awarded in similar cases which have received the approval of appellate courts, and that such fact should be persuasive in determining whether the award is excessive. The comparison approach is helpful and sometimes forceful, however, each case must be evaluated as an individual one, within the framework of its distinctive facts.

Also, when comparing the amount of awards in previous cases, recognition must be given to the continuing erosion in the purchasing power of the dollar. Appellants cite *Mock v. Atlantic Coast Line Railroad Company,* 227 S. C. 245, 87 S. E. (2d) 830 (1955) as being the largest verdict for a wrongful death of a minor approved by this Court. In *Mock* the plaintiffs were awarded $50,000.00. To blithely assume that $50,000.00 in 1955 translates into an equivalent sum today is, as the respondent suggests, to overlook the significance and impact of inflation. See *Smith v. Fitton and Pittman, Inc.,* 264 S. C. 129, 212 S. E. (2d) 925 (1975). As Justice Littlejohn cogently observed in *Smoak v. Seaboard Coast Line Railroad Company,* 259 S. C. 632, 639, 193 S. E. (2d) 594, 597 (1972),

"Money represents buying power. A verdict which was excessive when a carpenter earned forty cents an hour, might not be excessive today, when a carpenter earns three or four dollars an hour. A verdict given when beans were seventeen cents a can, would not represent the same considerations as when beans are thirty-seven cents a can. In determining whether a verdict is excessive, the buying power of the verdict involved must be considered."

In determining the damages recoverable under the Wrongful Death Statute, the question is not one of the value of the human life lost, rather it is the

damages sustained by the beneficiaries from the death. In *Zorn v. Crawford, supra,* the Court identified as elements of damages, "such mental shock and suffering, wounded feelings, grief and sorrow, loss of companionship and deprivation of the use and comfort of the intestate's society as the beneficiaries may have sustained as the result of the death of the intestate," 252 S. C. at page 137, 165 S. E. (2d) at page 645.

Although this Court has not had the occasion to pass upon a verdict in this amount for the wrongful death of a minor, in a closely analogous case the Fourth Circuit Court of Appeals affirmed a 1972 award of $125,000.00 by the Honorable Robert Hemphill, Federal District Judge, sitting without a jury. *Adams v. Hunter,* D. C., 343 F. Supp. 1284, affirmed, 4 Cir., 471 F. (2d) 648 (1973). In *Adams* the deceased was a nineteen year old "dutiful son . . . bright, friendly, productional and personable . . . obedient, respectful, devoted and unusually helpful to his father" page 1287. Furthermore, Judge Hemphill observed the measure of damages involves intangibles and "a jury would award a substantial sum, perhaps more than this court." p. 1291.

The deceased was a seventeen year old girl, in the twelfth grade, with excellent grades, good habits, devoted and obedient to her family, and the youngest child. She was unemployed, but helped her mother around the home.

"The loss to parents from the untimely death of a devoted child is not to be minimized," *Zorn v. Crawford, supra,* 252 S. C. p. 137, 165 S. E. (2d) p. 645. These are intangibles, the value of which cannot be determined by any fixed yardstick. Their loss to the beneficiaries must be estimated by the jury in the exercise of their sound judgment under all of the facts and circumstances of the case. We cannot say that the size of the verdict is such as to indicate passion or prejudice on the part of the jury.

It is in the province of the jury to determine amounts to be allowed and a verdict should not be disturbed unless it is so flagrantly excessive as to raise a pre-

sumption that it was the result of passion and prejudice, and not of sober, reflective judgment.

In examining the excessiveness of a jury verdict, the scope of review of the appellate courts, is of course, extremely limited. The standard we apply is hardly a precise one. As the Supreme Court noted in a footnote in *Grunenthal v. Long Island Railroad Company,* 393 U. S. 156, 159, 89 S. Ct. 331, 333, 21 L. Ed. (2d) 309 (1968) :

The standard has been variously phrased: "Common phrases are such as: 'grossly excessive,' 'inordinate,' 'shocking to the judicial conscience,' 'outrageously excessive,' 'so large as to shock the conscience of the Court,' 'monstrous,' and many others."

The reasonableness of the verdict was challenged ▮▮ before the trial judge and he reduced it. The fact he heard the evidence and was more familiar than we with the evidentiary atmosphere at trial gives him, we think, a better informed view than we have. This is particularly true when the elements of damage are intangibles and the appraisal depends somewhat on an observation of the beneficiaries and evaluation of their testimony. Nevertheless, we have carefully evaluated the pertinent evidence. Although the amount of the verdict might be higher than heretofore awarded in this Court, we do not regard the verdict as "monstrous" or "plainly unjust." There has not been a single trial event or evidentiary item, pointed out to us, which might have induced the jury to act out of passion or prejudice.

Affirmed.

LEWIS, C. J., and RHODES and GREGORY, JJ., concur.

LITTLEJOHN, J., dissents.

LITTLEJOHN, Justice (dissenting) :

I respectfully dissent and would remand the case for a new trial because the lower court erroneously refused to

allow counsel for the defendant to cross-examine the plaintiff relative to his prior inconsistent pleadings. In my view, the same was both erroneous and prejudicial.

The majority opinion holds that ". . . the trial judge should have permitted the cross examination on the pleadings." It proceeds, however, to rule that the refusal to allow the cross-examination "is not reversible error," and concludes the discretion of that issue by ruling, ". . . any impeachment would have been of no value and constitutes harmless error."

My disagreement is with the conclusion that cross-examination would not have affected the result of the trial.

Inasmuch as the majority opinion concedes the error, I need not belabor the point, except to add that this issue was dealt with by our Court in the case of *Young v. Martin,* 254 S. C. 50, 173 S. E. (2d) 361 (1970), wherein we cited, with approval, 31A C.J.S. *Evidence* § 303, to the effect that prior pleadings, verified or unverified, prepared by a litigant's attorney, with or without the knowledge of the party, are a proper subject of cross-examination.

The majority opinion goes far toward removing the confusion at the bench and bar relative to the handling of cases wherein a tort feasor has been eliminated from a case by reason of a covenant not to sue. *Powers v. Temple,* 250 S. C. 149, 156 S. E. (2d) 759 (1967), does not stand for the proposition that evidence relative to a covenant not to sue is always inadmissible. In *Powers,* it was held that evidence relative to the covenant not to sue and the amount paid was proper. In *McCombs v. Stephens,* 252 S. C. 442, 166 S. E. (2d) 814 (1969), it was held that reference to the covenant not to sue was improper. The method suggested in *Powers* as being preferable should never be used if there is good reason to handle the covenant otherwise in order to protect the rights of the parties. I interpret *Powers* to merely mean that the covenant should not be aired before the jury unless there

is good reason to do so. In the trial of this case, it was not necessary to mention the amount of the covenant in order to assure the defendant a fair trial. It was necessary to permit counsel for the defendant to cross-examine the plaintiff relative to his inconsistent representations to the court, as set out in previous pleadings. Plaintiff and witness, Robert W. Lucht, whom counsel sought to cross-examine, was the administrator of the estate and one of the two beneficiaries of the litigation.

His original complaint was brought against the Youngbloods alone, and in that complaint he alleged that the driver of the Youngblood Mustang drove across the yellow line and had a head-on collision with the Volkswagen in which plaintiff's intestate was a passenger.

Later, in a first amended complaint, he joined the driver of the Volkswagen and represented to the court, through his pleading, that the Volkswagen in which the intestate was riding was also across the center line. On the basis of these representations and these pleadings, the Patricks, who owned and operated the Volkswagen, paid $7,500 for a covenant not to sue.

Still later, in a second amended complaint, he eliminated the Patricks as defendants and alleged that only Youngblood, driving the Mustang, was across the center line, and took the position that the Volkswagen was on its proper side of the street.

The cross-examination was particularly important to the defendant, because the evidence indicating negligence on the part of Youngblood was largely circumstantial and because the two surviving passengers in the Volkswagen did not testify. It was the contention of Youngblood and his passenger that he swerved across the center line in an effort to avoid a collision with the Volkswagen, which was crossing the center line. The only real issue in the case was: Was the Volkswagen on the wrong side of the street? That plain-

tiff suffered damages was not in dispute, nor was it in dispute that the collision proximately caused the damages.

Therefore, the defendant was denied the right of cross-examination on the only vital issue. If the jury had been told that the plaintiff had previously represented to the court in a prior pleading that the Volkswagen was across the center line, the result might have been different. Unfortunately, whether or not the result would have been different cannot be proved or disproved to a mathematical certainty. I am convinced that the result might likely have been different if the cross-examination had been permitted.

In treating the prejudice issue in plaintiff's brief, it is contended, first, that the judge had a discretion to exercise, secondly, that the first amended complaint was not verified and, thirdly, that *Powers, supra,* controlled. The argument is without merit because, first, this is not a discretionary matter; under the facts, the defendant had the right to cross-examine. Secondly, the fact that the pleading was not verified is inconsequential and, thirdly, *Powers* does not apply, as shown hereinabove.

Being convinced that the defendant did not receive a fair trial, I would reverse and remand.