**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

MARY STEINKE, individually and as
personal representative of the estate
of Zachary Steinke; MIKE STEINKE,
individually and as personal
representative of the estate of
Zachary Steinke,
<u>Plaintiffs-Appellees,</u>

v.

BILLY PLAYER,
<u>Defendant-Appellant,</u>

and

No. 97-1625

BEACH BUNGEE, INCORPORATED;
CAROLINA LAND HOLDING
COMPANY OF LITTLE RIVER,
INCORPORATED; CHARLES VEREEN;
HAROLD MORRIS; MARSHALL BEAM;
RECREATIONAL STRUCTURES,
INCORPORATED; INGERSOLL-RAND
COMPANY; MASTER MECHANIC
MANUFACTURING COMPANY; JAY
PLAYER; ROBERT PLAYER,
<u>Defendants.</u>

MARY STEINKE, individually and as
personal representative of the estate
of Zachary Steinke; MIKE STEINKE,
individually and as personal
representative of the estate of
Zachary Steinke,
Plaintiffs-Appellees,

v.

CHARLES VEREEN,
Defendant-Appellant,

and

No. 97-1730

BEACH BUNGEE, INCORPORATED;
CAROLINA LAND HOLDING
COMPANY OF LITTLE RIVER,
INCORPORATED; HAROLD MORRIS;
BILLY PLAYER; MARSHALL BEAM;
RECREATIONAL STRUCTURES,
INCORPORATED; MASTER MECHANIC
MANUFACTURING COMPANY; JAY
PLAYER; ROBERT PLAYER, INGERSOLL-
RAND COMPANY,
Defendants.

Appeals from the United States District Court
for the District of South Carolina, at Florence.
William B. Traxler Jr., District Judge.
(CA-93-2679-4-21)

Argued: January 28, 1998

Decided: May 11, 1998

Before WILKINSON, Chief Judge, and ERVIN and
HAMILTON, Circuit Judges.

_____

2

Affirmed by unpublished opinion. Judge Ervin wrote the opinion, in which Chief Judge Wilkinson and Judge Hamilton joined.

_____

**COUNSEL**

**ARGUED:** Thomas Casey Brittain, HEARN, BRITTAIN & MARTIN, Myrtle Beach, South Carolina, for Appellant. John Daniel Kassel, SUGGS & KELLY, Columbia, South Carolina, for Appellees. **ON BRIEF:** Scott B. Umstead, HEARN, BRITTAIN & MARTIN, Myrtle Beach, South Carolina, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

ERVIN, Circuit Judge:

This case arises out of a wrongful death action by Mike and Mary Steinke for the death of their 17-year-old son, Zachary, which resulted from the defendants' negligent operation of a bungee jumping site. After the defendants appealed the jury's original $12 million actual damages verdict rendered against them, we remanded the issue of remittitur to the district court for reconsideration in light of Gasperini v. Center for Humanities, Inc., 518 U.S. 415 (1996). Defendant Billy Player now appeals the district court's order remitting the verdict to $6 million, contending that the amount should be further remitted or, in the alternative, that a new trial should be granted. Because there is no evidence that the district court abused its discretion in failing to grant a new trial absolute or in including damages for the parents' having witnessed their son's death, we affirm.

I.

We described the events giving rise to this wrongful death action in great detail in the previous appeal, and only a brief summary is

3

necessary here. On August 10, 1993, Zachary Steinke, the 17-year-old son of Mike and Mary Steinke, was killed at an attraction called Beach Bungee near Myrtle Beach, South Carolina when a cable in the jury-rigged attraction snapped, sending the steel cage in which Zack was riding plummeting 160 feet to the ground below.

Zack's parents did not see the cage actually fall, but were aware of the accident immediately after it happened. They entered the mangled cage and unsuccessfully attempted CPR on their son. The evidence further showed that Zack was an exemplary young man, who excelled in school and sports, and who was devoted to his parents. There is ample evidence that both his parents have been emotionally devastated by his death.

A jury awarded the Steinkes $12 million in actual damages on their wrongful death claim. The defendants, owners and operators of the bungee attraction, contended that the award was clearly excessive and sought remittitur. On appeal we affirmed on the question of the defendants' liability, but vacated the award and remanded the case to the district court to consider the defendants' motion for remittitur under South Carolina law, stating:

> [I]n determining on remand whether the jury's verdict was rendered in accordance with South Carolina law, the district court should look to South Carolina cases to determine the range of damages in cases analogous to the one at hand. See Imbrogno v. Chamberlin, 89 F.3d 87, 90 (2d Cir. 1996); Douglass v. Delta Air Lines, Inc., 897 F.2d 1336, 1339 (5th Cir. 1990). If the court believes that a departure from that range is justified, it should provide the reasoning behind its view. If the court determines that there are no comparable cases under South Carolina law, it should explain this determination as well. Such a decision by the district court will reduce the risk of caprice in large jury awards and will assure a reviewing court that the trial court exercised its considered discretion under the applicable state law.

Steinke v. Beach Bungee, Inc., 105 F.3d 192, 198 (4th Cir. 1997). In its order on remand, the district court found that the $12 million verdict was not the result of passion, caprice, or prejudice on the part of

4

the jury and did not therefore warrant a new trial absolute. However, the district court concluded that $12 million in damages was unduly liberal and reduced the amount to $6 million. The Steinkes accepted this reduction.

Defendants Billy Player and Charles Vereen appealed again, arguing that the district court failed to evaluate properly the size of the verdict in accordance with South Carolina law and that the $6 million award should be further remitted. Vereen failed to file a timely notice of appeal and his motion for an extension of time was denied by the district court. Consequently, only Player's appeal is before this court.

II.

Player maintains that the original verdict of $12 million was the result of jury passion or caprice and that the district court therefore erred in not granting a new trial absolute. Under South Carolina law, a new trial absolute should be granted "only if the verdict is so grossly excessive that it shocks the conscience of the court and clearly indicates the amount of the verdict was the result of caprice, passion, prejudice, partiality, corruption, or other improper motive." Knoke v. South Carolina Dept. of Parks, Recreation & Tourism , 478 S.E.2d 256, 258 (S.C. 1996). There is no evidence of any such improper motive at work here.

In reviewing the verdict, as we instructed it to do, the district court examined South Carolina cases analogous to this one-- wrongful death verdicts involving minor children and no pecuniary loss. Verdicts ranged from $22,000 in 1952, Hopkins v. Derst Baking Co., 71 S.E.2d 407 (S.C. 1952), to $3 million in 1996, Knoke, 78 S.E.2d at 258. The district court recognized that $12 million was above this range, but stated that this departure was justifiable based on the circumstances. Specifically, the district court looked at the evidence of the Steinkes' grief over the loss of their son, the circumstances surrounding Zack's death, and Zack's character. J.A. at 120. The district court pronounced itself "most persuaded" by the recent Knoke case, in which a 12-year-old boy died from asphyxiation in a cabin fire at a state park, and noted that in upholding the Knoke jury's $3 million dollar verdict, the South Carolina Supreme Court stressed that the intangible damages suffered by a parent who loses a child to a tragic

5

accident, "cannot be determined by any fixed measure." J.A. at 117 (quoting Knoke, 478 S.E.2d at 258-59). Twelve million dollars is clearly an enormous sum of money, and significantly greater than the $3 million Knoke award, but given the facts of this case, it is not so grossly excessive as to "shock the conscience of the court" and require a new trial absolute. Cf. Knoke, 478 F.2d at 258.

Finally, Player failed to point to any trial event or evidence that might have caused the jury to act out of passion or prejudice. Although he argued that the accident-scene evidence was impermissibly used to increase the amount of damages, nowhere did he contend that it was so prejudicial that it should have been excluded or that it caused the jury to make its award out of passion or prejudice. Therefore, while the verdict is indeed higher than any found to date in a South Carolina state court, it is not so "monstrous" or "plainly unjust" as to require a new trial absolute. See Lucht v. Youngblood, 221 S.E.2d 854, 859-60 (S.C. 1976) (using such phrases to give standard for new trial).

III.

Player contends that the district court improperly evaluated the size of the verdict in accordance with South Carolina law when remitting the $12 million verdict to $6 million. A district court's decision on questions of remittitur is reviewed under an abuse of discretion standard. Gasperini v. Center for Humanities, 116 S. Ct. 2211, 2225 (1996); see also Johnson v. Hugo's Skateway, 974 F.2d 1408, 1414 (4th Cir. 1992) (en banc); Defender Inds. v. Northwestern Mut. Life Ins. Co., 938 F.2d 502, 507 (4th Cir. 1991) (en banc). A district court sitting in diversity must apply state law standards to determine whether a verdict is excessive. Gasperini, 116 S. Ct. at 2224-25.

A.

Player contends that the district judge improperly allowed the grief suffered by Zack's parents as a result of their witnessing his death to be included in the $6 million verdict. According to Player, this type of compensation could only have been awarded through an action for negligent infliction of emotional distress. The problem with this argument, however, is that there is simply no South Carolina case law that

6

specifically prohibits including, as part of a wrongful death award, damages that arise from witnessing a death.

A claim for negligent infliction of emotional distress is certainly one avenue by which a person can seek compensation for damages arising from witnessing an accident involving a loved one, see, e.g., Kinard v. Augusta Sash & Door Co., 336 S.E.2d 465, 467 (S.C. 1985) (adopting general approach of Dillon v. Legg, 441 P.2d 912 (Cal. 1968), and setting forth elements for negligent infliction of emotional distress cause of action in South Carolina), but there are no cases in which a South Carolina court has stated, either explicitly or implicitly, that such an action is the only way to get such relief. To the contrary, as the district court noted, the South Carolina Supreme Court has specifically recognized that, when considering whether a verdict is excessive, each case must be evaluated individually and within the framework of its distinctive facts. J.A. at 121 (citing Lucht v. Youngblood, 221 S.E.2d 854, 858 (S.C. 1976); Smoak v. Seaboard Coast Line R. Co., 193 S.E.2d 594, 597 (S.C. 1972); Lynch v. Alexander, 130 S.E.2d 563, 567 (S.C. 1963)).

The South Carolina Wrongful Death Statute allows recovery for a very broad range of damages. According to the South Carolina Supreme Court, the recoverable elements of damages include pecuniary loss, mental shock and suffering, wounded feelings, grief, sorrow, and loss of society and companionship. Lucht, 221 S.E.2d at 859 (citing Zorn v. Crawford, 165 S.E.2d 640, 645 (S.C. 1969)). Witnessing the accident that led to a beloved child's death can certainly be said to belong in the "mental shock and suffering" category and, as the district court persuasively explained in its order, a parent's feelings of grief and sorrow would almost certainly be intensified by witnessing the death of a child, J.A. at 121-22, especially where a parent personally participated in an unsuccessful resuscitation attempt. Accordingly, we find that the district court did not abuse its discretion when it considered the damage Zack's parents suffered as a result of witnessing his death in setting the amount of the award in the wrongful death verdict.

B.

Player also suggests that, by failing to remit the verdict to an amount within the range of awards made by South Carolina courts in

7

similar cases, the district court failed on remand to properly follow our instructions. We reject this argument because the district court followed our instructions to the letter. As our previous opinion made clear, we did not place any type of cap on the amount of damages that the district court could find. Instead, we merely directed the district court to "look to South Carolina cases to determine the range of damages in cases analogous to the one at hand," and cautioned that "[i]f the court believes that a departure from that range is justified, it should provide the reasoning behind its view." Steinke, 105 F.3d at 198 (citations omitted). The district court's order did just that: it carefully examined South Carolina case law to determine the range of damages previously awarded by that state's courts in similar cases and then provided a thoughtful and thorough analysis of the facts in this case, including Zack's character, the violent circumstances surrounding his death, and the additional grief suffered by his parents as a result of having watched him die in such a terrible manner. The district court then reasonably concluded that these factors called for an award of damages significantly greater than any awards to date by South Carolina courts in similar wrongful death cases. The district court therefore complied with our instructions, demonstrating to the satisfaction of this court that it did indeed appropriately "exercise[ ] its considered discretion under applicable state law." Id.

IV.

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED